**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2812
_____

JEFFRY S. VODENICHAR; DAVID M. KING, JR. and
LEIGH V. KING, husband and wife; JOSEPH B. DAVIS and
LAUREN E. DAVIS, husband and wife; GROVE CITY
COUNTRY CLUB; and RICHARD BROADHEAD,
individually and on behalf of those similarly situated,

v.

HALCÓN ENERGY PROPERTIES, INC.; MORASCYZK &
POLOCHAK; and CO-EXPRISE, DBA CX-ENERGY

Halcón Energy Properties, Inc.,

                                                    Appellant
_____

On Appeal from the United State District Court
for the Western District of Pennsylvania
(D.C. Civ. Action No. 2-13-CV-00360)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 16, 2013
_____

Before: RENDELL, SMITH, and SHWARTZ, <u>Circuit
Judges</u>.

(Filed: August 16, 2013)


Kevin L. Colosimo, Esq.
Burleson LLP
501 Corporate Drive, Suite 105

Canonsburg, PA 15317
        Counsel for Appellant

David A. Borkovic, Esq.
Jones, Gregg, Creehan & Gerace, LLP
411 Seventh Avenue, Suite 1200
Pittsburgh, PA 15219
        Counsel for Appellees

Richard A. Finberg, Esq.
300 Mt. Lebanon Boulevard, Suite 206-B
Pittsburgh, PA 15234
        Counsel for Appellees

———————————

OPINION OF THE COURT
———————————

SHWARTZ, <u>Circuit Judge</u>.

Defendant Halcón Energy Properties, Inc. ("Halcón") appeals the District Court's Order remanding this case to state court based on the "home state" exception to subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). For the reasons stated below, we will affirm the District Court's remand order, but do so instead based on CAFA's "local controversy" exception.

## I.    FACTS & PROCEDURAL HISTORY

Plaintiffs Jeffry S. Vodenichar, David M. King, Jr., Leigh V. King, Joseph B. Davis, Lauren E. Davis, Grove City Country Club, and Richard Broadhead filed suit on behalf of themselves and other similarly situated landowners who sought to lease the oil and gas rights in their land in Mercer County, Pennsylvania. Defendants Morascyzk & Polochak ("M&P") and Co-eXprise, d/b/a "CX-Energy," ("CX-Energy") agreed to act as Plaintiffs' agents to negotiate leases of their oil and gas interests to energy companies under the terms of Landowner MarketPlace Agreements ("LMAs"). In exchange for their successful marketing efforts, M&P and CX-Energy were to be paid a "transaction fee."

M&P and CX-Energy entered into a Letter of Intent with Halcón ("Halcón Agreement"), an oil and gas company, pursuant to which Halcón would lease up to 60,000 acres of oil and gas rights from landowners who entered into LMAs and who had submitted lease documents to Halcón. Under the Halcón Agreement, each landowner who executed an LMA was guaranteed a $3,850 per acre payment plus an 18.5% royalty on the net amount Halcón realized from the oil and gas recovered from the property.

According to Plaintiffs, Halcón agreed to accept the leases absent a title defect, an adverse environmental claim, or restrictions on the ability to explore, drill for, or produce oil, gas, or hydrocarbons. Plaintiffs assert that Halcón rejected many of the leases for reasons other than those permitted under the Halcón Agreement. Halcón counters that the word "geology" was fraudulently omitted from the list of grounds upon which it could decline to lease the property, and that Halcón was within its bargained-for rights to reject the leases. Plaintiffs claim that this explanation was pretextual, as Halcón sought to extricate itself from the lease arrangement because it lost a bid to secure oil and gas rights in other nearby properties, which made the leases of Plaintiffs' land less attractive. Plaintiffs further claim that they did not know that any words were omitted from the agreements and if a change had been made, it was the fault of M&P and CX-Energy.

As a result of these events, Plaintiffs filed a putative class action against Halcón based upon diversity jurisdiction, 28 U.S.C. § 1332(a), in the United States District Court for the Western District of Pennsylvania ("first filed action"). In their complaint, Plaintiffs alleged that Halcón breached their agreement and the duty of fair dealing. Halcón filed an answer and the District Court convened a case management conference. During the conference, Halcón informed the District Court that it anticipated joining M&P and CX-Energy, claiming that they were "necessary parties." Case Mgmt. Conf. Tr. 13-14, No. 12-1624 (W.D. Pa. Jan. 16, 2013), ECF No. 31.

Plaintiffs decided to file direct claims against M&P and CX-Energy. Knowing that adding these parties to the

3

complaint would destroy diversity jurisdiction, Plaintiffs filed a motion to dismiss the first filed action without prejudice and with the intent of pursuing their claims against all defendants in state court. In response to the motion, Halcón stated that it did not oppose joining M&P and CX-Energy, agreed that the claims against all three defendants would benefit from being heard in a single proceeding, but asserted that the case should proceed in the District Court under CAFA, particularly given the discovery already produced and the ongoing alternative dispute resolution ("ADR") activities.

The District Court granted the motion to voluntarily dismiss the first filed action without prejudice, reasoning that the parties agreed that the claims should proceed in one forum, federal diversity would be destroyed by the addition of M&P and CX-Energy, and CAFA had not been pled as a basis for jurisdiction. The District Court also ordered the parties to complete the ADR process and directed the parties to retain the discovery produced to both facilitate the ADR process and assist in the state court case.

On the day Plaintiffs filed their motion to dismiss the first filed action, they, through their same counsel, filed a state court class action complaint in the Court of Common Pleas of Mercer County, Pennsylvania, alleging that Halcón, M&P, and CX-Energy breached their agreements with, and duties to, the putative class ("second filed action"). The second filed complaint is identical to the first filed complaint, except with respect to the addition of two named plaintiffs, two defendants, the causes of action against the additional defendants, seven paragraphs setting forth the facts supporting those additional claims, and several exhibits relating thereto.

Halcón then removed the second filed action to the District Court, which was assigned to the same District Judge as the first filed action. On the cover sheet that accompanied the removal petition, Halcón indicated that the second filed action was related to the first filed action. In a text-entry order filed in the second filed action shortly after removal, the District Court made specific reference to the first filed action, including a directive that the parties inform the District Court

4

of the status of the ADR process that the Court had ordered in the first filed action.

Plaintiffs filed a motion to remand the second filed action based upon CAFA's local controversy exception to federal subject matter jurisdiction. The District Court found that the local controversy exception did not apply, but held that CAFA's home state exception required remanding the case to the Court of Common Pleas. Halcón petitioned for review of the remand order pursuant to 28 U.S.C. § 1453(c)(1), which we granted.

## II.  JURISDICTION & STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1453(c) and review issues of subject matter jurisdiction and statutory interpretation de novo. Kaufman v. Allstate New Jersey Insurance Co., 561 F.3d 144, 151 (3d Cir. 2009).

## III.  DISCUSSION

CAFA provides federal courts with jurisdiction over civil class actions if the "matter in controversy exceeds the sum or value of $5,000,000," the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B). Thus, the statute authorizes federal jurisdiction over class actions even in the absence of complete diversity between the parties, except where the "controversy is uniquely" connected to the state in which the action was originally filed. Kaufman, 561 F.3d at 149 & n.4. To this end, the statute includes two mandatory exceptions to federal subject matter jurisdiction, known as the "local controversy" and "home state" exceptions. 28 U.S.C. § 1332(d)(4)(A)-(B). The party seeking to invoke an exception bears the burden of proving by a preponderance of the evidence that the exception applies.[1] Kaufman, 561 F.3d at 153-54.

---

[1] Because these exceptions are examined to determine whether a federal court has subject matter jurisdiction, "our inquiry is limited to examining the case 'as of the time it was

5

Upon determining that the local controversy exception was inapplicable, the District Court concluded that the home state exception applied to this case. For the reasons explained herein, we part company with the District Court and conclude that CAFA's home state exception is inapplicable to this case, but that remand is warranted under the local controversy exception.

## A.    Home State Exception

The home state exception requires a federal court to decline to exercise subject matter jurisdiction in CAFA class actions where "two-thirds or more of the members of all

---

filed in state court[.]'" Std. Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1349 (2013) (quoting Wisc. Dep't of Corrs. v. Schacht, 524 U.S. 381, 390 (1998)) (concluding that, although District Court appropriately considered stipulation in the complaint by the class action plaintiff to an amount in controversy below CAFA's jurisdictional threshold, the District Court wrongly concluded that the precertification stipulation was binding on the absent class members). As we noted in Erie Ins. Exch. v. Erie Indem. Co., No. 13-1415, __ F.3d __, 2013 WL 3481493, at *3 (3d Cir. June 28, 2013), in evaluating whether removal was proper, "we generally focus on the allegations in the Complaint and the notice of removal." Id. (emphasis added). Courts may consider pleadings as well as  evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies. See Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1015-17 (9th Cir. 2011) (relying solely on the pleadings to evaluate the "significant relief" and "significant basis of the claims" factors under the local controversy exception, but considering external evidence to determine the "citizenship" factor); Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1246 (10th Cir. 2009) (looking to the total activity of a company to determine the "citizenship" factor ); Moua v. Jani-King of Minn., Inc., 613 F. Supp. 2d 1103, 1108-09 (D. Minn. 2009) (considering the allegations and plaintiff's arguments in other submissions); Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 517 (E.D. Pa. 2007) (considering defendant's answer and averments).

6

proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). A party seeking to invoke this exception must therefore: (1) establish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of the defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defendants. See Anthony, 535 F. Supp. 2d at 514-15.

There is no dispute that the named plaintiffs, more than two-thirds of the class members,[2] CX-Energy, and M&P are all citizens of Pennsylvania, the state where the action was originally filed.[3] Halcón is a Delaware Corporation with its principal place of business and headquarters in Texas, and thus it is not a citizen of Pennsylvania.

Having established the citizenships of the parties and two-thirds or more of the putative class, the Court must next identify the "primary defendants" under Section

---

[2] Members of the putative class who are natural persons are deemed citizens of the state in which they are domiciled, which is typically the state where the person lives. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989); District of Columbia v. Murphy, 314 U.S. 441, 455 (1941). Under CAFA, suits brought "by unincorporated associations [are] treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entities' principal place of business and not by the citizenship of its members." Erie Ins., 2013 WL 3481493, at *6 n.7; 28 U.S.C. § 1332(d)(10).
[3] CX-Energy is deemed a citizen of Pennsylvania, which is both its state of incorporation, 28 U.S.C. § 1332(c)(1), and the place "where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010). As an unincorporated association, CAFA deems M&P "to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," 28 U.S.C. § 1332(d)(10), which in this case is Pennsylvania.

7

1332(d)(4)(B). Here, the District Court concluded that the home state exception applied based upon its determination that M&P and CX-Energy were the only primary defendants and both were citizens of Pennsylvania, where the second filed action was originally filed. Because Halcón had denied liability in its answer, the District Court reasoned that Halcón was not a primary defendant. We conclude, however, that Halcón—which is not a citizen of Pennsylvania—is a primary defendant, thereby rendering CAFA's home state exception inapplicable to this case.

CAFA itself does not define the phrase "primary defendants." The word "primary" has several meanings, including: "first in order of time or development," "primitive," "of first rank, importance, or value," "principal," "basic," "fundamental," "direct," "firsthand," and "belonging to the first group or order in successive divisions, combinations or ramifications." Merriam-Webster's Collegiate Dictionary 923 (10th ed. 2002). Looking at the surrounding statutory language, we can rule out certain of these definitions (such as those that focus on sequence), and construe the word primary to mean "principal," "fundamental," or "direct."

Some courts have embraced the definition of primary to mean direct and construed the words "primary defendants" to capture those defendants who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification. See, e.g., Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC, No. 2:10-cv-00510, 2011 WL 941079, at *6 (D. Nev. Mar. 16, 2011); Anthony, 535 F. Supp. 2d at 517; Kitson v. Bank of Edwardsville, No. 06-528, 2006 WL 3392752, at *13-17 (S.D. Ill. Nov. 22, 2006). This construction finds support in the statements of CAFA's Sponsors, which describe the primary defendants as those who are the "real targets" of the lawsuit. 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte); see also H.R. Rep. No. 108-144, 2003 WL 21321526, at 38 (2003) (stating that "[t]he sponsors intend that primary defendants be intended to reach those defendants who are the real targets of the lawsuit, i.e., the defendants who would be expected to incur most of the

8

loss if liability is found.") This language shows that the Sponsors were focused on the defendants who plaintiffs alleged are the real wrongdoers as opposed to those defendants who may have to pay because of the actions of others.[4] Therefore, the direct versus secondary liability distinction some courts use is consistent with the legislative intent.

Courts also look at the allegations to identify the defendants expected to sustain the greatest loss if liability were found, Bennett v. Bd. of Comm'rs for East Jefferson Levee Dist., Nos. 07-3130, 07-3131, 2007 WL 2571942, at *6 (E.D. La. Aug. 31, 2007) (comparing the maximum exposure of liability for each defendant to determine primacy), and whether such defendants have "substantial exposure to significant portions of the proposed class."[5] Robinson v. Cheetah Transp., No. 06-0005, 2006 WL 468820, at *2 n.7 (W.D. La. Nov. 14, 2006).[6] These considerations, therefore,

---

[4] For this reason, courts examining whether a defendant is a "primary defendant" should not consider whether the defendant may be able to recover from others or whether it is able to satisfy the judgment.

[5] This is also consistent with the legislative history. The Sponsors explicitly stated that "[t]he term "primary defendant" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes, as opposed to simply a few individual class members." 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte); see also H.R. Rep. No. 108-144, 2003 WL 21321526, at 38 (2003). Thus, the Sponsors intended the identity of the "primary defendants" to be determined based upon the allegations concerning the defendants expected to be liable to the greatest number of class members and to suffer the greatest loss if liability is found.

[6] See also Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 572 (5th Cir. 2011) (finding that defendants were primary defendants after considering the fact that all punitive class members had claims against them and that they had issued the insurance policies at the center of the dispute).

9

focus on the number of class members purportedly impacted by the defendant's alleged actions and the amount the defendant may lose if found liable. To determine the number of class members to whom a defendant may be liable and to identify the defendants who would sustain the greatest loss if found liable, courts must assume liability will be established.[7] As a result, courts should not consider whether a defendant has denied liability, and the District Court's reliance on Halcón's denial of liability was misplaced.

In short, courts tasked with determining whether a defendant is a "primary defendant" under CAFA should assume liability will be found and determine whether the defendant is the "real target" of the plaintiffs' accusations. In doing so, they should also determine if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others. Also, courts should ask whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.

Applying these principles, we conclude that Plaintiffs allege that each defendant is directly liable, appear to apportion liability equally among the defendants, and seek similar relief from all defendants. While more claims are asserted against M&P and CX-Energy than against Halcón, the claims against Halcón are as, if not more, significant in that Plaintiffs allege Halcón breached its lease agreement with more than 1,000 landowners and owes damages exceeding $50,000 to each class member. Thus, Halcón is a "primary defendant."

Finally, by using the word "the" before the words "primary defendants" rather than the word "a," the statute requires remand under the home state exception only if all primary defendants are citizens of Pennsylvania. Anthony, 535 F. Supp. 2d at 515. Because Halcón is a primary defendant and is not from the same state as the Pennsylvania

---

[7] This is in keeping with the contingent nature of the Sponsors' language (i.e., "if liability is found"). H.R. Rep. No. 108-144, 2003 WL 21321526, at 38 (2003).

class members, remand based upon this exception is not warranted.

For these reasons, we conclude that the home state exception does not apply and remand should not have been ordered on this basis.

## B.    Local Controversy Exception

Finding the District Court's rationale for remand lacking, we turn to the other exception to CAFA's subject matter jurisdiction: the local controversy exception. The District Court ruled that the local controversy exception did not apply to this case because another class action had been filed arising from the same facts and asserting similar claims. For the reasons set forth herein, we conclude that "no other class action" had been filed as contemplated under CAFA, and therefore remand of this case pursuant to the local controversy exception is appropriate.

Under the local controversy exception:

A district court shall decline to exercise jurisdiction under paragraph (2)—

(A)(i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

11

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A). A party seeking to invoke this exception must therefore show that: (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years. These elements ensure that the exception is invoked when the class is primarily local, the lawsuit is against "at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief," the injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants. 151 Cong. Rec. S999-02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter).

Each element of the local controversy exception is met and remand pursuant to this exception is warranted.

First, as stated previously, there is no dispute that more than two-thirds of the class members are citizens of Pennsylvania.

Second, there is no dispute that at least one defendant named in the case is local—that is, from the state in which the case was originally filed. As discussed above, both M&P and CX-Energy are citizens of Pennsylvania, the state in which

12

the case was originally filed, and hence are local defendants under CAFA.

Third, each local defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).[8] As agents for the putative class members, the local defendants entered an agreement with Halcón pursuant to which Halcón would lease up to 60,000 acres of Plaintiffs' oil and gas rights. Plaintiffs allege that the local defendants breached their contractual and fiduciary obligations to the class by failing to ensure that the lease agreements conformed to Halcón's requirements and made negligent misrepresentations to the class concerning the basis upon which Halcón could refuse to enter the leases.[9] Put differently, Plaintiffs essentially assert that M&P and CX-Energy made misrepresentations to induce them to relinquish their oil and gas rights and caused Halcón to decline to enter the lease agreement by changing the terms of the agreement and that these actions damaged Plaintiffs. Because Plaintiffs' claims are based upon Halcón's rejection of the leases and because Halcón allegedly rejected the leases based on language that the local defendants purportedly omitted, the local defendants' conduct forms a "significant basis" of Plaintiffs' claims.

Fourth, Plaintiffs are seeking "significant relief" from both local defendants. Plaintiffs seek from the local defendants damages totaling more than $50,000 for each of

---

[8] This factor does not require that each class member assert a claim against that local defendant nor must the local defendant's alleged conduct form the basis of every claim asserted. Kaufman, 561 F.3d at 155. The focus is on the conduct in which the local defendant allegedly engaged and the alleged number of people impacted by it.

[9] Halcón's cross-claim also alleges that the local defendants agreed to include language in certain lease documents that did not appear in the documents that plaintiffs signed. Halcón claims that the local defendants made statements concerning the basis upon which Halcón could reject the lease, which Halcón alleges contradicts the written agreement.

13

the 1,362 class members and a declaration that the local defendants were not entitled to receive fees from Plaintiffs for the lease transactions. While monetary and declaratory relief is also sought from Halcón, this does not change the fact that significant relief is being sought from the local defendants.

Fifth, there is no dispute that the "principal injuries" resulting from the alleged conduct or related conduct of each defendant were "incurred in the state in which the case was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).[10] Here, most class members who sought to lease their oil and gas rights allegedly reside in, and all of the land is located in, Mercer County, Pennsylvania. Thus, Pennsylvania citizens own the land that is at the heart of this dispute, and they were allegedly financially injured by the defendants' alleged breach of the agreements to lease the oil and gas rights to their Pennsylvania property.

Finally, contrary to the District Court, we determine that no other class action, as contemplated by CAFA, asserting the same or similar allegations against any of the defendants had been filed in the preceding three years. While we recognize that Plaintiffs filed two separate putative class action complaints against Halcón, the act of filing a subsequent complaint does not necessarily mean that the earlier filed action bars invocation of the exception. Indeed, close scrutiny of the two cases shows that the first filed action does not constitute an "other class action" as contemplated by CAFA.

CAFA does not define what constitutes an "other class action" other than to limit it to filed cases asserting similar factual allegations against a defendant. The goals of the statute, however, provide guidance. In enacting CAFA, Congress recognized the benefits of having one federal forum

---

[10] This provision is written in the disjunctive and hence, the provision is "satisfied either 1) when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed 'or' 2) when principal injuries resulting from any related conduct of each defendant were incurred in the state." Kaufman, 561 F.3d at 158.

14

to adjudicate multiple cases filed in various courts against a defendant. See Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(a)(1), 119 Stat. 4. To this end, the statute seeks to control the impact of multiple class actions filed by different members of the same class against a defendant by providing a single forum to resolve similar claims. See S. Rep. No. 109-14, at 4-5 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 5-6; DeHart v. BP America, Inc., No. 09-626, 2010 WL 231744, at *12 (W.D. La. Jan. 14, 2010). Moreover, Congress sought to have all but truly local controversies[11] proceed in federal court and found that when a "controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy] exception is intended to address." S. Rep. No. 109-14, at 40-41, 2005 U.S.C.C.A.N. at 39; see also Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 4.

In short, Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases. It follows that the "no other class action" factor must not be read too narrowly. The "inquiry is whether similar factual allegations have been made against the defendant in multiple class actions"—and hence they are facing separate, distinct lawsuits—without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories.[12] S. Rep. No.

_____

[11] The local controversy exception seeks to "identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others" 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner), and "enables State courts to adjudicate truly local disputes involving principal injuries concentrated within the forum State." 151 Cong. Rec. S999-02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter).

[12] Also, if two class actions arise out of the same facts, but are factually and analytically different, such that the proof necessary for one class to prevail differs from the proof

109-14, at 41, 2005 U.S.C.C.A.N. at 39; <u>see also</u> <u>Giannini v. Nw. Mut. Life Ins. Co.</u>, No. 12-77, 2012 WL 1535196, at *5 (N.D. Cal. Apr. 30, 2012); <u>Rasberry</u>, 609 F. Supp. 2d at 605.

The question here is whether the first and second filed actions are the same case or if the first filed action is an "other class action," as contemplated under the local controversy exception. The same representative plaintiffs filed two complaints on behalf of an identically-defined putative class arising from the same factual allegations. While the first filed action was pending in federal court, the parties proceeded with discovery and Halcón disclosed its intention to join the local defendants based on their role in the transaction that gave rise to the dispute. Plaintiffs then expressed a desire to add them as direct defendants. Instead of amending the first filed complaint in a way that would destroy complete diversity, Plaintiffs sought to voluntarily dismiss the first filed action so that Plaintiffs and Halcón could assert claims against the local defendants in a single forum in which subject matter jurisdiction undisputedly existed. Apparently recognizing the possibility that, absent a settlement, the dispute between the sides would continue, the District Court granted the motion to dismiss the first filed action without prejudice but ordered the parties to participate in ADR and to retain the discovery that they had exchanged for use in both the ADR and the case that joined the two local defendants. Thus, the District Court's actions showed that it considered the second filed action a continuation of the first filed action and took practical steps to ensure that the act of filing the second complaint did not delay the parties' ability to proceed. Treating the second filed action in this way is consistent with the goal of the local controversy exception of ensuring that the defendants are not subject to similar claims in different forums and allowing all claims against them to proceed in a coordinated fashion.

Furthermore, this is not a copycat situation where the defendants face similar class claims brought by different

---

another class would need to present, the first filed class action would not constitute an "other" class action as defined in CAFA. <u>Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.</u>, 609 F. Supp. 2d 594, 605 (E.D. Tex. 2009).

16

named plaintiffs and different counsel in different forums. Rather, the named Plaintiffs and their counsel brought class claims in November 2012 and, based on Halcón's disclosure, Plaintiffs decided to enlarge the case to add the two local defendants together with claims unique to those parties that arose from the same transactions. In practical terms, Plaintiffs' actions were no different from a situation where a party amends a pleading to join parties to an existing case, which is indeed what Halcón itself stated it intended to do during the original district court proceeding. Indeed, there is nothing in the record that would suggest otherwise.

In short, Halcón is defending the same case that it had been defending since November 2012 with the exception of the addition of the other parties Halcón intended to join. The first filed action therefore is not an "other class action" as contemplated under CAFA, but rather is the same case, albeit enlarged, and thus, the "no other class action" prong of the local controversy exception is satisfied.

For these reasons, the local controversy exception to CAFA jurisdiction mandates remand of this truly local case involving Pennsylvania landowners and their land.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court granting the motion to remand.