[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15861
_____

D.C. Docket No. 2:15-cv-00653-BJR-TFM

CHARLES HUNTER,
individually and on behalf of a class of persons who
were issued tickets for running a red light at those intersections
within the City of Montgomery where automated photographic
equipment is in use,
MIKE HENDERSON,
individually and on behalf of a class of persons who
were issued tickets for running a red light at those intersections
within the City of Montgomery where automated photographic
equipment is in use and who have not paid the civil fine,

Plaintiffs-Appellees,

versus

CITY OF MONTGOMERY, ALABAMA,
AMERICAN TRAFFIC SOLUTIONS, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(June 14, 2017)

Before ED CARNES, Chief Judge, ROSENBAUM and HIGGINBOTHAM,[*] Circuit Judges.

ED CARNES, Chief Judge:

The City of Montgomery has a red-light camera program that is managed by American Traffic Solutions, Inc.  Under that program Charles Hunter and Mike Henderson were ticketed and required to pay civil fines.  They are the named plaintiffs in a would-be class action that was filed in Alabama state court claiming that the program and fines violate state law.  (The complaint included a federal law claim but it was later dropped.)

The defendants, the City and Traffic Solutions, removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The district court remanded the case to state court after deciding that the local controversy and home state exceptions, which bar the exercise of jurisdiction under CAFA, applied.  See 28 U.S.C. § 1332(d)(4)(A), (B).  This is the appeal by the two defendants of that remand order.

## I. FACTUAL BACKGROUND

Accepting the factual allegations in the complaint as true for present purposes, in 2007 Traffic Solutions approached the City and offered to install and manage a system of red light cameras within the city limits.  The City liked the

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

idea and enacted an ordinance authorizing a system of "Automated Photographic Enforcement of Traffic Control Device Violations." Under the system Traffic Solutions sends photographs of potential red light violations to the Montgomery Police Department. Those photographs are viewed by police officers. If the officers determine that the red light was run, Traffic Solutions sends out a notice of violation to the owner of the vehicle that was driven through the red light. The resulting fine is paid to Traffic Solutions, which keeps a portion of it and remits the remainder to the City.

Under generally applicable law, Alabama classifies running a red light as a criminal misdemeanor. But in 2009, to accommodate Montgomery's program, the Alabama Legislature enacted a law creating a new "non-criminal category of state law called a civil violation." That category is the opposite of a generally applicable one because it applies only to red light violations detected by cameras within Montgomery's city limits.

After receiving a notice of violation based on a photo taken by one of Traffic Solutions' red light cameras, Hunter brought this lawsuit as a class action in Alabama state court. His complaint contended that the Legislature's creation of the category of "civil violations" violated the Alabama Constitution, and that the City's ordinance violated state law. It also claimed that the defendants intentionally made yellow lights too short so that drivers would not have enough

3

time to stop before the light turned red, leading to more violations and more revenue. Finally, the complaint contained a claim under 42 U.S.C. § 1983, alleging that the defendants had acted under color of state law to deprive the class of rights protected by the federal Constitution.

The relief sought was: a declaration that the red light camera program was unlawful; a judgment requiring the City to refund all red light violation fines it had collected as a result of the program; an injunction directing both defendants to stop issuing tickets based on the program; an award of attorney's fees under 42 U.S.C. § 1988 and the common fund doctrine; and the entry of any other necessary and proper orders.

Traffic Solutions, with the City's consent, removed the lawsuit to federal court based on the § 1983 claim, the request for attorney's fees under § 1988, and CAFA diversity jurisdiction. Hunter then amended his complaint to drop the § 1983 claim and his reliance on § 1988 for attorney's fees. The amendment also added as a second named plaintiff Henderson, another Alabamian who had received a red light ticket because of a Traffic Solutions camera. The amended complaint sought the same types of relief as the original one, except that its request for attorney's fees relied on the common fund doctrine alone.

About ten months after the case had been removed to federal court, without prompting the district court ordered supplemental briefing on whether it had

4

subject matter jurisdiction.  The order doing that noted the plaintiffs had dropped the § 1983 claim, which was the sole federal claim, and it mentioned that one of CAFA's exceptions to the exercise of federal jurisdiction might apply and require a remand to state court.  Taking the hint, the plaintiffs' supplemental brief contended that both CAFA's local controversy exception and its home state exception to the exercise of federal jurisdiction applied.

The district court agreed, finding that both exceptions applied so that "[j]urisdiction over this case [was] not appropriate under . . . the Class Action Fairness Act."  The court also declined to exercise supplemental jurisdiction over the plaintiffs' claims (a part of its order the defendants do not challenge).  This is the defendants' appeal from the remand order.

## II. APPELLATE JURISDICTION

We start with whether we have jurisdiction to review the district court's order.  See Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 814, 818 (11th Cir. 2010) (noting that even where "[n]either party challenges our jurisdiction to entertain" an appeal, "we are obligated to address jurisdictional questions").  As a general matter, remand orders are reviewable as final decisions under 28 U.S.C. § 1291.  Polk County v. Prison Health Servs., Inc., 170 F.3d 1081, 1083 (11th Cir. 1999); see Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713–15, 116 S. Ct. 1712, 1719–20 (1996).

5

But our analysis cannot end with that general principle supporting jurisdiction because some of what § 1291 giveth, § 1447 taketh away. Section 1447(c) reads, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). That text encompasses two types of remands: (1) those following a timely motion that are based on a defect other than lack of subject matter jurisdiction, and (2) those, whether motion-motivated or not, that are based on the lack of subject matter jurisdiction. See id.; Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc., 254 F.3d 1317, 1319 (11th Cir. 2001).

Section 1447(d), in turn, provides in relevant part that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). To readers not given to fanciful interpretation, those words would seem to rule out review in cases, like this one, where there is an order remanding a case to the state court from which it was removed. That is, after all, exactly what the words say. Yet, as Justice Thomas has pointed out, the Supreme Court has "interpreted § 1447(d) to mean the opposite of what it says." Kakarala v. Wells Fargo Bank, N.A., 578 U.S. __, 136 S. Ct. 1153, 1153 (2016) (Thomas, J., dissenting from the denial of certiorari). Under the Court's

6

Thermtron decision we do have jurisdiction to decide this appeal, unless the remand order in this case (1) followed a timely motion for a defect other than subject matter jurisdiction, or (2) was based on the district court's lack of subject matter jurisdiction. See Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 345–46, 96 S. Ct. 584, 590 (1976), abrogated on other grounds by Quackenbush, 517 U.S. at 715–16, 116 S. Ct. at 1720; see also Quackenbush, 517 U.S. at 711–12, 116 S. Ct. at 1718 (explaining that "§ 1447(d) must be read in pari materia with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)").

The district court itself raised the possibility that a CAFA exception required remand. Because the remand was not done on motion, the first ground for a § 1447(d) jurisdictional bar to our review is out. See Whole Health, 254 F.3d at 1319 (holding that review of a remand was not barred by § 1447(d) even though review of that same remand would have been barred if it had been based on a party's motion). And a motion would not have been timely then anyway because the thirty-day deadline had passed ten times over before the district court raised the possibility of the case being subject to remand under one of the two CAFA exceptions.

As to the second ground for a § 1447(d) jurisdictional bar to our review, the remand in this case was not for lack of subject matter jurisdiction because the

7

CAFA exceptions that the remand was based on do not go to the existence of subject matter jurisdiction; instead they go to whether jurisdiction may be exercised in a particular circumstance.  CAFA, through § 1332(d)(2), provides that "[t]he district courts shall have original jurisdiction" in cases where the amount in controversy is over $5 million and the parties are minimally diverse.  See 28 U.S.C. § 1332(d)(2).[1]  Those two requirements are met in this case.

But if the local controversy exception or the home state exception applies, CAFA requires that the district court "decline to exercise jurisdiction."  Id. § 1332(d)(4).  The text recognizes that the court has jurisdiction but prevents the court from exercising it if either exception applies.  Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1022 (9th Cir. 2007); see also Watson v. City of Allen, 821 F.3d 634, 639 (5th Cir. 2016) ("[T]he 'local controversy' and 'home state' exceptions require abstention from the exercise of jurisdiction and are not truly jurisdictional in nature.").  Because the two CAFA exceptions that the district court relied on do not affect the existence of subject matter jurisdiction, the order here does not fall into § 1447(d)'s second category of remand orders.[2]

---

[1] Other CAFA provisions state that the § 1332(d)(2) grant of jurisdiction "shall not apply" in certain circumstances.  For example, § 1332(d)(5)(B) provides that § 1332(d)(2) "shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100."  None of those "shall not apply" provisions apply to this case.

[2] The district court initially requested briefing "on the [c]ourt's basis for jurisdiction in this case."  But its remand order did not state that it lacked subject matter jurisdiction; instead, the order explained that jurisdiction was "not appropriate" and that the court was "declin[ing] to

For those reasons, a remand order based on CAFA's local controversy exception or home state exception does not fall within either of § 1447(d)'s categories, and review of it is not barred. We do have jurisdiction to entertain this appeal.[3]

## III. THE HOME STATE EXCEPTION

Having decided that we have jurisdiction, we turn now to the issue of whether the remand was proper. "Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel." Lowery v. Ala. Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007). One way the statute does that is by "broadening federal diversity jurisdiction over class actions with interstate implications." Id.

As we have already explained, the allegations of the amended complaint in this case, as supplemented by a stipulation in the district court, are adequate to give the district court subject matter jurisdiction over it. See p. 8, above. The district

---

exercise jurisdiction." In any event, we are not bound by a district court's characterization of the basis of a remand; it is our responsibility to determine whether the remand was based on a jurisdictional defect or some other issue. See Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc., 561 F.3d 1294, 1296–97 (11th Cir. 2009) (deciding that the district court incorrectly characterized a procedural defect as a lack of subject matter jurisdiction).

[3] 28 U.S.C. § 1453(c) establishes a permissive appeal procedure through which "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed." In Evans v. Walter Industries, Inc., 449 F.3d 1159 (11th Cir. 2006), we reviewed under § 1453(c) a remand order based on CAFA's local controversy exception. We did so because the Evans appellants had sought review only under § 1453(c). That decision says nothing about whether § 1291 could have been an alternative basis for appellate jurisdiction.

court may not, however, exercise the CAFA jurisdiction it has if either the local controversy exception or the home state exception applies. 28 U.S.C. § 1332(d)(4)(A), (B). The plaintiffs, who are defending the remand, bear the burden of showing that at least one of the exceptions does apply. See Lowery, 483 F.3d at 1208 n.55; Serrano, 478 F.3d at 1023–24. We start and end with the home state exception.

The home state exception applies if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The parties agree that two-thirds or more of the members of the proposed plaintiff classes are citizens of Alabama. And the defendants do not contest that that the City is a citizen of Alabama and that Traffic Solutions is not.

That leaves, as the dispositive question, whether Traffic Solutions is a "primary defendant[ ]" under CAFA. If it is, then one of the primary defendants is not a citizen of the state where the action was filed, the home state exception to the exercise of jurisdiction does not apply, and the remand cannot be justified under that exception. On the other hand, if Traffic Solutions is not a primary defendant under CAFA, the City is the sole primary defendant and it is a citizen of the state where the action was filed. As a result, the home state exception to the exercise of CAFA jurisdiction will apply, and the remand was proper.

What are primary defendants for CAFA home state exception purposes? The statutory language provides little guidance. The term "primary defendants" is undefined, and there are no contextual clues as to its meaning. The dictionary does not help much either. It tells us that a "primary" defendant is one "of first rank, importance, or value." Primary, Merriam-Webster's Collegiate Dictionary (11th ed. 2009); see also Primary, Random House Unabridged Dictionary (2d ed. 1993) (defining "primary" as "first or highest in rank or importance; chief; principal"). That seems to mean there can be only one primary defendant because only one of a type, set, or group can be of first rank, of first importance, or chief, or principal. But we know from the statutory language itself that cannot be correct because the statute uses the plural: "primary defendants," not "primary defendant." 28 U.S.C. § 1332(d)(4)(B). Even after considering the statutory "language itself, the specific context in which that language is used, and the broader context of the statute as a whole," Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997), we still find the term ambiguous.

In this situation, absent any other source of guidance, we reluctantly and cautiously turn to legislative history materials. See Barnhill v. Johnson, 503 U.S. 393, 401, 112 S. Ct. 1386, 1391 (1992) ("To begin, we note that appeals to statutory history are well taken only to resolve statutory ambiguity.") (quotation marks omitted); CBS Broad., Inc. v. Echostar Commc'ns Corp., 265 F.3d 1193,

1212 (11th Cir. 2001) ("This Circuit's decisions . . . mandat[e] that ambiguity in statutory language be shown <u>before</u> a court delves into legislative history.") (quotation marks omitted) (alterations in original); <u>id.</u> at 1213 ("Furthermore, we will not consult the Conference Committee Report, as resort to legislative history is unnecessary, and indeed, improper, where the statute's terms are plain and unambiguous."); <u>see also</u> <u>Garcia v. Vanguard Car Rental USA, Inc.</u>, 540 F.3d 1242, 1247 (11th Cir. 2008) (explaining that "[w]e may consult legislative history to elucidate a statute's ambiguous or vague terms," but "when we consult legislative history, we do so with due regard for its well-known limitations and dangers").

The Senate Judiciary Committee's report on CAFA contains this statement about the meaning of the key term in the case before us:

> [T]he Committee intends that "primary defend[a]nts" be interpreted to reach those defendants who are the real "targets" of the lawsuit — i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. No. 109-14 at 43 (2005).[4]  A report issued by the House Judiciary Committee regarding an earlier version of CAFA contains materially identical

---

[4] The Senate Judiciary Committee report does not state that its explanation of "primary defendants" applies to the home state exception, § 1332(d)(4)(B).  Instead, it says that

language.  See H.R. Rep. No. 108-144 at 38 (2003).  The explanation in the committee reports makes the primary factor in answering the primary defendant question the potential monetary loss that defendant faces — whether it is the real target of the claims seeking damages, has substantial exposure to damages if liability is found, and would incur most of the loss if damages are awarded.

The Third Circuit has stated that the House Judiciary Committee's report and other legislative history supports "constru[ing] the words 'primary defendants' to capture those who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification."  Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 504–05 (3d Cir. 2013).  Along the same lines, the Vodenichar opinion suggests that courts assessing whether a defendant is a "primary defendant" ask "whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable."  Id. at 505–06.  We agree with that reasoning and rule, at least where monetary relief is sought, as it is in this case.

---

explanation applies to § 1332(d)(3), which allows remand "in the interests of justice," after consideration of six factors, if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."  There is no good reason to believe that the Senate Judiciary Committee's explanation of "primary defendants" would not also apply to the home state exception contained in § 1332(d)(4)(B).

13

It is not difficult to apply this potential monetary loss standard in this case. The only request for monetary relief in the amended complaint is for a refund of all traffic fines collected in connection with the red light camera program.  That monetary relief is sought from the City alone, not from Traffic Solutions.  Even if the City could and did seek indemnification or contribution from Traffic Solutions for any refunds it paid, that would be "vicarious[ ] or secondar[y] liab[ility]" for Traffic Solutions, which is not enough to make it a "primary defendant."  See Vodenichar, 733 F.3d at 504–05.

The plaintiffs do seek injunctive relief against Traffic Solutions, but that is not monetary relief.  And where monetary relief is sought, it is monetary relief — not injunctive, declaratory, or any other kind of relief — that matters.[5]  The plaintiffs seek no monetary relief at all from Traffic Solutions.  It is not a "primary defendant" for purposes of the home state exception.  That leaves the City as the only "primary defendant" in this case, and the City is a citizen of Alabama.

Because the only primary defendant is a "citizen[ ] of the State in which th[is] action was originally filed," and the other requirements are met, the home

---

[5] Sometimes the monetary value of declaratory or injunctive relief is substantial.  See, e.g., S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315–16 (11th Cir. 2014) (declaratory judgment would entitle class members to over $68 million in benefits).  We imply no view on how the primary defendant issue should be decided in a case where the monetary value of the declaratory or injunctive relief exceeds the amount of the monetary relief sought.

14

state exception to CAFA jurisdiction applies.  See 28 U.S.C. § 1332(d)(4)(B).  We

affirm the district court's order remanding this case to Alabama state court.[6]

**AFFIRMED.**

---

[6] Because we affirm the remand order on the basis of the home state exception, we need not, and do not, reach the district court's alternative ground that the local controversy exception applies.

15