# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2021

Lyle W. Cayce
Clerk

No. 21-90028

Taylor Madison; Angie Dickson,

*Plaintiffs—Respondents*,

*versus*

ADT, L.L.C.,

*Defendant—Petitioner*.

Motion for Leave to Appeal
Pursuant to 28 U.S.C. § 1453

Consolidated With

No. 21-10837

No. 21-90028
c/w No. 21-10837

Taylor Madison; Angie Dickson,

*Plaintiffs—Appellees,*

*versus*

ADT, L.L.C.,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2516

---

Before Jones, Duncan, and Engelhardt, *Circuit Judges.*

Edith H. Jones, *Circuit Judge*:

Telesforo Aviles was an ADT LLC ("ADT") employee who installed ADT's home-security surveillance systems and used his access privileges to spy on customers in their homes. Taylor Madison and Angie Dickson, now also representing a class of plaintiffs, sued Aviles in state court seeking millions in damages.

ADT, which is being sued directly by other plaintiffs in both Texas and Florida for the breach of privacy, intervened in this suit and removed to the Northern District of Texas pursuant to the Class Action Fairness Act ("CAFA"). The plaintiffs moved to remand the suit to state court, and the district court granted the motion, citing the "home state" exception to CAFA. ADT sought this appeal pursuant to 28 U.S.C. § 1453(c), and plaintiffs oppose. We GRANT permission to appeal and REVERSE the district court's remand order.

This court reviews de novo the district court's order to remand to state court a suit removed pursuant to CAFA. *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015). The party objecting to CAFA jurisdiction must prove that a CAFA exception divests the federal court of the ability to retain a class action. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)(citing cases).

"CAFA provides district courts with jurisdiction over 'class action[s]' in which the matter in controversy exceeds $5,000,000 and at least one class member is a citizen of a State different from the defendant. § 1332(d)(2)(A)." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) *reh'g denied*, 140 S. Ct. 17 (2019). However, CAFA seeks to "draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hollinger*, 654 F.3d at 570 (citing *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)). Therefore, the act provides a number of scenarios in which federal courts must abstain from exercising jurisdiction. *Id.* The "home state" exception affords one such scenario, whereby the court must abstain if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* at 570; 28 U.S.C. § 1332(d)(4)(B).

Aviles, who was sued by the plaintiffs, is a "primary defendant," of course. The issue here is whether ADT, a non-citizen of Texas, is also a "primary defendant" under CAFA. If ADT is not a primary defendant, the district court was right to remand to the state court, but if ADT is a primary defendant, the district court was required to retain jurisdiction.

This court has only addressed this question with minimal reasoning, and there is scant discussion across our sister circuits. The leading case that

examines the meaning of primary defendant is *Vodenichar v. Halcón Energy Props, Inc.*, 733 F.3d 497 (3rd Cir. 2013). In that case, the Third Circuit described two chief approaches district courts have used to define primary defendant. The first attempts to "capture those defendants who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification." *Id.* 504. This approach focuses "on the defendants who plaintiffs alleged are the real wrongdoers as opposed to those defendants who may have to pay because of the actions of others." *Id.* at 505. The second looks "to identify the defendants expected to sustain the greatest loss if liability were found . . . and whether such defendants have substantial exposure to significant portions of the proposed class." *Id.* (internal citations omitted).

The *Vodenichar* panel adopted a blend of these two approaches, holding that courts "should assume liability will be found and determine whether the defendant is the 'real target' of the plaintiffs' accusations." *Id.* at 505. This includes "determin[ing] if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others," and also requires the court to consider whether, "given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Id.* at 505–06. In that case, the circuit court held that three defendants were primary defendants: two had been non-diverse leasing agents of the plaintiff class, while the third was an oil and gas company, a diverse defendant, that allegedly reneged on lease agreements. Accordingly, the court rejected remand based on the home state exception.

This court's sparse analysis is similar to that in *Vodenichar*. In *Hollinger,* the panel merely stated in passing (the issue of primary defendant was not in dispute) that a class of insurance companies were primary

4

defendants because "all putative class members . . . have claims against the [non-diverse] County Mutuals, and as the entities that issued the insurance policies, the County Mutuals have a primary role in the alleged discrimination." 654 F.3d at 572. Several years later, in *Watson v. City of Allen, Tx.*, another panel of this court considered whether three private companies of diverse citizenship, with whom Texas municipalities contracted to operate challenged red light cameras, were primary defendants. 821 F.3d 634 (5th Cir. 2016). The panel began its analysis by observing that the "suit's primary thrust [wa]s an attempt to declare unconstitutional the Texas red light camera legislative scheme." *Id.* at 641. Although the panel noted that the claims against the private companies were "expressly contingent on a threshold finding that the challenged legislative scheme [wa]s unconstitutional," *id.*, its quest was to identify the "suit's primary thrust" and thereby to determine the suit's "primary defendant." The court concluded that because the companies were not primary parties to the suit, as opposed to the state and the municipalities, the CAFA home state exception applied.

None of these cases is factually apposite to the present litigation, but there is much to commend the *Vodenichar* emphasis on the "real target" of the litigation and *Watson*'s description of the controversy's "primary thrust." Whether ADT is vicariously or secondarily liable is a relevant factor,[1] certainly, but it does not necessarily control a court's determination, or the analysis would often be at odds with the Supreme Court's admonition "against adopting rules in the CAFA context that would 'exalt form over

---

[1] Plaintiffs make much of the fact that ADT became a defendant by voluntary intervention, and they have not—yet—sued ADT. To accept their demurrer, however, would be naïve, because the statute of limitations will not run on ADT's potential liability for some months, and the parties are currently embroiled in litigation over a substantial discovery request and a motion to compel arbitration.

substance.'" *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1096 (8th Cir. 2021) (citing *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 595, 133 S. Ct. 1345, 1350 (2013)).  Madison and Dickson claim to represent a class of plaintiffs seeking millions in recovery for the invasion of their privacy, although, as of yet, they have asserted claims against only the offending employee (who is imprisoned).  But the thrust of this suit is to gain access to ADT's deep pockets, and ADT, having properly intervened, must be considered a primary defendant under CAFA.

We GRANT permission to appeal.  Further, because the district court erred in remanding, its order is REVERSED.