OPINION OF THE COURT
FUENTES, Circuit Judge:
We are asked to determine whether this case is a class action that belongs in federal court under the Class Action Fairness Act of 2005, Pub.L. No. 109-2, 119 Stat. 4 (“CAFA”). Erie Insurance Exchange (“Exchange”) filed suit against its attorney-in-fact, Erie Indemnity Co. (“Indemnity”), in Pennsylvania state court, alleging that Indemnity misappropriated over $300 million in fees that belonged to Exchange. The complaint was filed for Exchange “by” certain of its members as trustees ad litem, and by those members “on behalf of’ all other members. Contending that the words “on behalf of’ convert this case into a class action, Indemnity removed the case to federal court but the District Court remanded the case to state court on Exchange’s motion. Because this case was brought under state rules that bear no resemblance to Rule 23 in that they allow for suits by entities, not a conglomerate of individuals, we conclude that it does not meet the statutory definition of “class action.” We therefore affirm the District Court’s order.
I.
A. Factual Background
The parties do not dispute that Exchange is a reciprocal insurance exchange organized under Pennsylvania law. Since at least 1921, Pennsylvania has authorized the aggregation of resources for the purpose of covering most losses that may otherwise be insured against under Pennsylvania’s laws. See 40 Pa. Stat. Ann. § 961 (2012). Thus, Exchange’s members purchase insurance policies and receive indemnification for losses out of Exchange’s pool of funds. The pool is comprised of fees, including insurance premiums and other charges, paid by Exchange’s members. Importantly, the legal association of these individuals exists independent of this suit.
The original complaint, filed in the Court of Common Pleas of Fayette County, Pennsylvania on August 1, 2012 (the “Complaint”), alleges that Exchange is owned by its subscribers and has no independent officers or governing body. It also alleges that Indemnity is a public corporation organized under Pennsylvania law, and that it serves as attorney-in-fact for Exchange. According to the Complaint, to receive insurance, each Exchange member is required to sign an identical agreement appointing Indemnity as attorney-in-fact on behalf of Exchange (the “Subscriber’s Agreement”). The Subscriber’s Agreement gives Indemnity broad powers to “manage and conduct the business and affairs of’ Exchange, including the ability to issue policies for Exchange, collect premiums, and invest Exchange’s funds. Joint Appendix (“J.A.”) 35. In exchange for these services, Indemnity is permitted to retain up to 25% of all premiums written or assumed by Exchange. The balance of the premiums is to be used for insurance losses and other operational costs of Exchange and may be distributed to its members as dividends at the discretion of Indemnity.
The Complaint alleges that members of Exchange who pay their insurance premiums in installments must also pay service charges, and that members are also subject to late payment and policy reinstatement fees. The Complaint also claims that, beginning in 1997, Indemnity began to retain for itself the service charges that certain members paid to Exchange, which monies belonged to Exchange, and that, beginning in 2008, Indemnity misappropri *157 ated the late payment and policy reinstatement fees, totaling over $300 million dollars.
B. Procedural History
The Complaint names Exchange as plaintiff, and states that Exchange brings the suit “by” four of its individual members as “trustees ad litem” (“Individual Members”). J.A. 28. Further, each Individual Member is said to bring the suit “on behalf of all members of Exchange.” Compl. ¶¶ 1-4. The action was purportedly brought “pursuant to Pa. R. Civ. P. 2152,” id. ¶ 4, which provides that “[a]n action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association. An action so prosecuted shall be entitled ‘X Association by A and B, Trustees ad Litem’ against the party defendant.” Pa. R. Civ. P. 2152.
The Complaint pleads three counts under state law: (1) breach of contract, alleging that the “plaintiffs herein sustained damages” as a result of Indemnity’s breach of the Subscriber’s Agreement in retaining services charges, and seeking relief “on behalf of’ all members of Exchange; (2) breach of fiduciary duty, also seeking relief on behalf of the members of Exchange; and (3) “equity,” requesting relief in the amount of misappropriated funds “on behalf of Exchange.” Id. ¶¶ 30-47.
Indemnity filed a notice of removal, arguing that this case constitutes a “class action within the meaning of the Class Action Fairness Act.” J.A. 21. After the case was transferred to the District Court for the Western District of Pennsylvania, plaintiffs moved to remand, arguing that this case does not constitute a “class action” as that term is used in CAFA, and that, in the alternative, CAFA’s diversity of citizenship requirement is not met. Indemnity responded that, among other arguments, the suit was improperly brought under Rule 2152 of the Pennsylvania Rules of Civil Procedure. As noted, Rule 2152 sets forth how suits on behalf of “associations” are to be prosecuted under Pennsylvania law. However, the Pennsylvania rules define “associations” to exclude entities that are “corporations or similar entities],” such as “insurance association^] or exchange^].” Pa. R. Civ. P. 2176; see also Pa. R. Civ. P. 2151. Pennsylvania law provides that actions on behalf of such “a corporation or similar entity” instead “shall be prosecuted ... in its corporate name.” Pa. R. Civ. P. 2177. Thus, the Original Complaint would not seem to fit under Rule 2152.
An amended complaint was filed while the motion for remand was pending (the “Amended Complaint”). The Amended Complaint contains no references to Rule 2152, no longer requests relief “on behalf of’ individual members of Exchange, and asserts that it is brought by individual members “on behalf of Exchange.” J.A. 72, ¶¶ 1-4.
In October 2012, the District Court granted plaintiffs’ motion to remand the case, concluding that it does not constitute a “class action” under CAFA. Indemnity filed a timely petition for leave to appeal, which we granted on February 14, 2013.
While the petition for appeal was pending, three of the four Individual Members filed a lawsuit in the District Court for the Western District of Pennsylvania (the “Federal Lawsuit”). The complaint in that case stated two alternative causes of action — one styled as a class action by the individual members on behalf of all the members of Exchange, and the other a non-class action on behalf of Exchange by its members. See Compl. at 2, Erie Ins. Exch. v. Stover, No. 1:13-cv-37 (W.D.Pa. Feb. 6, 2013). The Federal Lawsuit *158 names as defendants certain trustees of Exchange, allegedly appointed by Indemnity and responsible for permitting Indemnity to take funds from Exchange, the same funds that are at issue in this lawsuit.
II.
CAFA grants us appellate jurisdiction to review the District Court’s remand order. 28 U.S.C. § 1453(c). But the basic question we must resolve is whether a federal court has subject matter jurisdiction to hear this case in the first instance. Indemnity, as the party seeking removal, bears the burden of establishing that federal subject matter jurisdiction exists. Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 151 (3d Cir.2009). To evaluate whether removal is proper, we generally focus on the allegations in the Complaint and the notice of removal. Id.[1]
A.
CAFA gives federal courts subject matter jurisdiction over “class actions” if the suit meets certain requirements, such as involving an amount in controversy over $5 million in the aggregate and involving at least one plaintiff who is a resident of a jurisdiction different than that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). The principal dispute here, however, is whether this case even constitutes a “class action.”
We begin, of course, with CAFA’s language, which defines a “class action” as “any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B). Like the other Courts of Appeals to have construed CAFA’s definition of “class action,” we find “no ambiguity” in the text of the law and Indemnity points to none. Washington v. Chimei Innolux Corp., 659 F.3d 842, 848 (9th Cir.2011). The statute directs us to inquire whether this action was brought under a “state statute or rule” that is “similar” to Rule 23 or, in other words, “whether the state statute authorizes the suit ‘as a class action.’ ” Id.[2]
Indemnity has made no attempt to argue that this dispute meets the statutory definition of class action. Notably, Indemnity does not contend that the Complaint was filed pursuant to Rule 23 of the Federal Rules of Civil Procedure, or under any state statute or rule that is “similar” to Rule 23 or that otherwise authorizes an action to be brought by a representative as a class action. Nor could it. As noted, this action was originally brought pursuant to Rule 2152 of the Pennsylvania Rules of Civil Procedure (“Rule 2152”), which allows suits on behalf of an unincorporated association to be prosecuted by its members.[3] But Rule 2152 contains none of the *159 defining characteristics of Rule 23 of the Federal Rules of Civil Procedure (“Rule 23”). It does not, for example, provide for class certification mechanisms, Fed.R.Civ.P. 23(c)(1), list requirements such as numerosity or commonality that a suit must meet to constitute a class action, Fed.R.Civ.P. 23(a)-(b),[4] or specify the form and substance of notice that must be given to absent class members, Fed.R.Civ.P. 23(c)(2). Nor does Rule 2152 permit individual class members to opt-out or provide for the appointment of a lead plaintiff or class counsel. Far from “authorizing an action to be brought by [a] representative person[ ] as a class,” 28 U.S.C. § 1332(d)(1)(B), Rule 2152 merely authorizes suits by representatives on behalf of an unincorporated association. See Pa. R. Civ. P. 2152. Indeed, to the extent we have interpreted Pennsylvania law on the matter, we have held that suits by members of an unincorporated association (such as those contemplated by Rule 2152) may not be brought as a class action. See Underwood v. Maloney, 256 F.2d 334, 337 (3d Cir.1958) (“Pennsylvania has forbidden a suit by or against an unincorporated association to be maintained as a class action.”).
Indemnity and the District Court noted that, under Pennsylvania law, Rule 2152 is not the proper vehicle for a lawsuit by an insurance exchange. The District Court explained that a suit by such entity must be prosecuted under Rule 2177 of the Pennsylvania Rules of Civil Procedure (“Rule 2177”), which requires suits by insurance exchanges to be filed “in [their] corporate name.” Pa. R. Civ. P. 2177. This may be so, but despite Rule 2176’s exclusion of insurance exchanges from “unincorporated associations,” there is Pennsylvania authority permitting a suit by an insurance exchange to be prosecuted in the same way suits by other unincorporated associations are prosecuted under Rule 2152, i.e. “by some of the members in their own names on behalf of or as representing all.” Barford v. Beaner Elec. Co., 11 Pa. D. & C. 51, 55 (Pa.Ct. Common Pleas 1927). Thus, under either Rule, a suit by Exchange is properly understood as a suit by one entity, not by “a conglomerate of individuals.” Long v. Sakleson, 328 Pa. 261, 195 A. 416, 420 (1937). Moreover, Rule 2177 is even less like Rule 23 in that it contains none of Rule 23’s class-related requirements, and, unlike Rule 2152, does not even explicitly contemplate a suit filed by a member “on behalf of’ an association.
In any event, we need not resolve the state-law question of whether Rule 2152 or Rule 2177 provides the proper basis for filing a suit by an insurance exchange, a question “we only see through Erie’s glass darkly.” Purdue Pharma P.P. v. Kentucky, 704 F.3d 208, 220 (2d Cir.2013). Plaintiffs are the masters of their complaints and are “free to choose the statutory provisions under which they will bring their claims.” Id. at 216 n. 7; see also Standard Fire Ins. Co. v. Knowles, — U.S. —, 133 S.Ct. 1345, 1350, 185 L.Ed.2d 439 (2013). If the case is procedurally unsound under Pennsylvania’s rules, the Commonwealth’s courts are best suited to correct the problem. We will not rewrite the Complaint to create jurisdiction under the pretense of correcting a state-law error.
By contrast to these rules, Rules 1701 through 1704 of the Pennsylvania Rules of Civil Procedure contain specific require- *160 merits for a lawsuit to be brought as a class action, many of which mirror the requirements of Rule 23. See Pa. R. Civ. P. 1702 (listing numerosity, commonality, and typicality requirements of Pennsylvania class actions); Pa. R. Civ. P. 1704 (requiring separate heading for “Class Action allegations”). There is no contention that this case was brought under such rules, other than Indemnity’s attempt to equate, without citation to any authority, a suit filed “on behalf of all members of Exchange” to a class suit under Rule 1701. See Appellant’s Br. at 10 n.4. Our own precedent belies Indemnity’s attempt to characterize a suit brought “on behalf of’ members of an association as a class action. See Underwood, 256 F.2d at 337.[5] Plain and simple, this is a suit by an entity, not a class of individuals.
Our holding does not require “a formalistic search through the pages of the complaint for magic words,” as Indemnity suggests. Appellant’s Br. at 14 n.7 (citing Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 310 (6th Cir.2009)). Instead, as per Congress’s command, we reach our holding by looking to the rule under which a case was filed. “[N]o amount of piercing the pleadings will change the statute or rule under which the case is filed. If this is a formalistic outcome, it is a formalism dictated by Congress.” In re Vioxx Prods. Liab. Litig., 843 F.Supp.2d 654, 664 (E.D.La.2012).
B.
Unable to meet the clear statutory definition of “class action,” Indemnity resorts to a series of extra-textual arguments and to a complicated analysis of the Complaint, in an attempt to meet its burden of establishing removal by convincing us that “there is more to this case than meets the eye.” Purdue, 704 F.3d at 217. We are not persuaded.
Indemnity points to CAFA’s legislative history, which it contends dictates that CAFA’s application of class action “should not be confined solely to lawsuits that are labeled ‘class actions.’ ” Appellant’s Br. at 12 (citing S.Rep. No. 109-14, at 35 (2005)). But this general legislative statement does nothing to tip the scales in Indemnity’s favor. It neither modifies the statutory command of which suits are to be considered class actions, nor provides a test by which to answer the question of whether a suit constitutes a “class action.” We do not quarrel with the view that “class actions” are not only cases labeled as such, but our holding does not turn on the fact that that label is missing from the Complaint. Rather, it turns on the fact that this case was not brought pursuant to any rule sufficiently similar to Rule 23, and that Indemnity has not pointed to any rule that would even permit a suit by an exchange through its members to be brought as a class action under Pennsylvania law. Cf. Chimei, 659 F.3d at 849-50 (rejecting the argument that “liberally” defining “class action” required finding that a suit that had some resemblance to a class action was a CAFA “class action”).[6]
In a related argument, Indemnity asks that we look at the “substance” of the *161 allegations in the Complaint and ignore “formalistic” labels to determine whether removal is proper. Appellant’s Br. at 9-10. This argument is most curious, as with its very next argument Indemnity urges that we focus narrowly on Complaint’s use of the words “on behalf of,” and on the differences between the prayer for relief in Counts One and Two compared to that in Count Three to conclude that this case really is a class action. Id. at 10-11. Indemnity even suggests that the use of the plural of “plaintiff’ means that this is a representative suit. Id. at 11. But Indemnity cannot invoke subject matter jurisdiction by cherry-picking key words from a complaint any more than a plaintiff can artificially deprive a federal court of subject matter jurisdiction by artful pleading or labeling. Failing to affix “class action” to a pleading can no more deprive us of jurisdiction than using the words “on behalf of,” or the plural of “plaintiff,” can magically confer it.
Finally, Indemnity notes that “Exchange ... is not a party to” the Subscriber’s Agreements that form the basis of the claims in the Complaint. Id. at 10. Presumably, the thrust of this argument is that Exchange’s members are the “real party in interest” to this suit. But, this confuses the state-law question of who may properly bring this case with the question of whether this case was filed pursuant to a rule sufficiently similar to Rule 23. And, in any event, this argument proves too much. As noted, Exchange is an unincorporated entity with no management or directors. Its only ability to contract, or otherwise perform legal acts, is either through Indemnity itself or through its members. In other words, the fact that each individual member had to sign a Subscriber’s Agreement is inherent in the nature of an entity such as Exchange. If Indemnity’s arguments were accepted, all suits by an insurance exchange against its attorney-in-fact — necessarily prosecuted by individual members — will always be treated as class actions. We know of nothing in Pennsylvania’s rules that evince any intent to reach this strange result. To the contrary, Pennsylvania law suggests that such suits should not be considered to be class actions. See, e.g., Pa. R. Civ. P. 2177; Long, 195 A. at 421 (suit against an insurance exchange is not against “a conglomerate of individuals”).[7]
Far from helping Indemnity, its “substance of the claims” arguments convince us that this case is not properly -viewed as a class action. Even if this case were viewed as a suit by all of Exchange’s members against Indemnity on Exchange’s be-, half, it would still bear little resemblance to a Rule 23 action. The group of individuals that comprise Exchange exists to pool resources and buy insurance and will continue to exist beyond the life of this suit. By contrast, a “class” in a class action is a group of individuals whose legal association normally begins and ends with the lawsuit, which is not the case here. Nor do we see any indication that members of Exchange can opt in or out of the suit (which will bind Exchange), or that they are entitled to notice, an opportunity to object, or to be appointed lead plaintiff.
*162 As for whatever recovery may be obtained at the conclusion of this litigation, Indemnity does not contend that it belongs to Exchange’s individual members. To the contrary, the Complaint alleges that the misappropriated funds were paid to Exchange. See Compl. ¶¶24, 25 (alleging that Indemnity retained moneys “previously received by Exchange”). It is true that Exchange’s members will indirectly benefit from any recovery that goes to Exchange’s pool of assets. But that fact does not make this case a class action any more than a lawsuit by, say, a regular corporation is a class action simply because its shareholders indirectly benefit from the corporation’s recovery in the suit.
Accordingly, Indemnity’s additional arguments, which have already taken us far afield from a straightforward application of the unambiguous definition of class action to this case, must be rejected.[8]
C.
Finally, Indemnity invokes a general notion of estoppel and argues that because the subsequently-filed Federal Lawsuit arises “out of the same nucleus of operative fact” as this action, we should conclude that it constitutes an attempt at “forum manipulation,” Appellant’s Br. at 17, and therefore keep this case in federal court. There are two fundamental problems with this argument.
First, it ignores the axiomatic principle that in deciding a motion for remand the proper inquiry is whether jurisdiction existed “as of the time [the case] was filed in state court.” Knowles, 133 S.Ct. at 1349. Indemnity itself recognizes this principle in the context of attacking the District Court’s analysis of the Amended Complaint. See Appellant’s Br. at 15. We are not permitted, by CAFA or otherwise, to hold that the subsequent filing of a lawsuit may create subject matter jurisdiction over a previously filed suit, where no jurisdiction existed in the first place.
Second, Indemnity’s argument confuses questions regarding Exchange’s capacity to sue with questions of subject matter jurisdiction. “[I]ssues pertaining to the capacity to sue ... are deserving of consideration only after the jurisdiction of the federal court has been firmly established.” Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass’n, 554 F.2d 1254, 1260 (3d Cir.1977). The effect of allegedly adopting differing positions regarding capacity to sue will be addressed, if necessary, by either the state court handling this case or the federal court handling the Federal Lawsuit, as the case may be.
The cases that Indemnity relies on demonstrate that doctrines such as judicial estoppel and res judicata equip courts to address situations in which plaintiffs file multiple lawsuits or adopt contradictory litigation postures. See, e.g., Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 551 (3d Cir.2006). But federal courts are courts of limited powers, and those remedies do not permit us to create subject matter jurisdiction. See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (explaining that “no action of the parties can confer” jurisdiction because “principles of estoppel do not apply” to the question of whether jurisdiction exists). We therefore decline to apply equitable principles in a way that would impermissibly expand fed *163 eral judicial power in violation of Article III.[9]
III.
This case was not filed under any rule that contemplates class proceedings, and Indemnity does not contend otherwise. It therefore fails to meet the statutory definition of “class action” and may not properly be removed under CAFA. Even after accepting Indemnity’s invitation to perform an analysis beyond what CAFA’s text requires, and to wade through the complaint in hopes of concluding that something else is afoot, we have failed to uncover any evidence that this case is really a class action wolf dressed in sheep’s clothing.
The District Court’s judgment is AFFIRMED.

. We review issues of subject matter jurisdiction, and the statutory interpretation issues raised in this case, de novo. Morgan v. Gay, 471 F.3d 469, 472 (3d Cir.2006).

. The relevant portions of Rule 23 provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" numerosity, commonality, typicality, and adequacy of representation are met, and if the class meets other requirements and is certified by the court as a class after following certain notice procedures. Fed.R.Civ.P. 23(a)-(c).

.As noted, the Amended Complaint removed references to Rule 2152 and purported to be brought under Rule 2177. But, as Indemnity points out, jurisdiction is analyzed "as of the time [the case] was filed in state court." Standard Fire Ins. Co. v. Knowles, - U.S. -, 133 S.Ct. 1345, 1349, 185 L.Ed.2d 439 (2013); see also Kaufman, 561 F.3d at 152. We therefore consider the jurisdictional inqui *159 ry by reference to the Original Complaint, and do not consider the Amended Complaint.

. Rather than contain a numerosity requirement, Rule 2152 is not limited to suits involving associations of a certain size. It appears that an action by an association with, say, two members, may be instituted under Rule 2152.

. Indemnity’s only attempt to come to terms with the language of the statute is in a footnote, where Indemnity labels as "restrictive” an analysis focused on CAFA’s textual definition of "class action.” See Appellant’s Br. at 10 n.4. We disagree with that characterization.

. Our dissenting colleague similarly relies extensively on CAFA’s legislative history and suggests that our decision "contravenes Congress’s intent” in enacting that law. Dissent at 163, 163-64, 166, 166-67. But CAFA’s legislative history is particularly suspect given that it represents the views of only a handful of the legislators voting for the law. See Brill v. Countrywide Home Loans, 427 F.3d 446, *161 448 (7th Cir.2005) (explaining that Senate Report was signed by only thirteen of 82 senators voting for CAFA and thus has less "force than an opinion poll of legislators").

. CAFA itself evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity’s principal place of business and not by the citizenship of its members. See 28 U.S.C. § 1332(d)(10).

. In light of our conclusion that Indemnity has failed to meet its threshold burden of establishing that this case is a "class action,” we need not reach Exchange's argument that minimal diversity of citizenship is defeated. See 28 U.S.C. § 1332(d)(2). However, as stated, CAFA itself suggests that this argument is correct. See supra n. 6.

. Nor will we "fashion a rule" that directs consolidation of this case with the Federal Lawsuit. See Appellant’s Br. at 19. Aside from the fact that such remedy would result in our exercising jurisdiction contrary to the state court’s authority, this case is nothing like Freeman v. Blue Ridge Paper Prods., Inc., 551 F.3d 405 (6th Cir.2008), on which Indemnity relies for its proposed consolidation rule. In Freeman, the Court found that the lawsuit was artificially separated into several state court cases for the explicit purposes of avoiding "federal jurisdiction.” Id. at 407. Here, by contrast, the separate action was brought not in state court but in federal court, undermining any contention that it was brought to avoid "federal jurisdiction.”