**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1053
_____

ERIE INSURANCE EXCHANGE, an unincorporated
association, by TROY STEPHENSON, CHRISTINA
STEPHENSON, and STEVEN BARNETT, trustees ad
litem, and alternatively, ERIE INSURANCE EXCHANGE,
by TROY STEPHENSON, CHRISTINA STEPHENSON,
and STEVEN BARNETT

v.

ERIE INDEMNITY COMPANY,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-22-cv-00166
Magistrate Judge:  The Honorable Cynthia R. Eddy
_____

Argued April 20, 2023

Before: HARDIMAN, BIBAS, and SMITH, *Circuit Judges*

(Filed: May 22, 2023)

Edwin J. Kilpela, Jr. [**ARGUED**]
James LaMarca
Elizabeth Pollock-Avery
Lynch Carpenter
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
     *Counsel for Appellee*

Neal R. Devlin
Aurora L. Hardin
Knox McLaughlin Gornall & Sennett
120 W. Tenth Street
Erie, PA 16501

Steven B. Feirson
Michael H. McGinley [**ARGUED**]
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104
     *Counsel for Appellant*

David R. Fine
K&L Gates
17 N. Second Street
18th Floor
Harrisburg, PA 17101

*Counsel for Amici Appellant Chamber of Commerce of
the United States
        and Pennsylvania Chamber of Business & Industry*

Casey A. Coyle
Babst Calland
603 Stanwix Street
Two Gateway Center, 6th Floor
Pittsburgh, PA 15222
        *Counsel for Amici Appellant American Property
Casualty Insurance Association
        and Pennsylvania Coalition for Civil Justice Reform*

_____

## OPINION OF THE COURT
_____

**SMITH**, *Circuit Judge*.

Erie Indemnity Co. ("Indemnity") appeals the District Court's order remanding this matter to Pennsylvania state court. Indemnity argues that the District Court had jurisdiction because the case is a "class action" for purposes of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"). In the alternative, Indemnity argues that federal jurisdiction exists because this case is a continuation of a previous federal class action against Indemnity involving similar parties and claims. We are not persuaded on either ground and will affirm the District Court's order.

3

I.

A.

Erie Insurance Exchange ("Exchange") is an unincorporated association that operates as a reciprocal insurance exchange under Pennsylvania law. *See* 40 Pa. Stat. § 961 (authorizing creation of insurance exchanges through which individuals "exchange reciprocal or inter-insurance contracts with each other . . . providing indemnity among themselves"). Exchange is owned by its members, who are subscribers to insurance plans offered by Erie Insurance Group. Exchange is, essentially, a pool of funds comprised of insurance premiums and other fees paid by subscribers. Exchange's funds are mainly used to cover claims by subscribers. Exchange has no independent officers nor a governing body.

Indemnity is a Pennsylvania corporation that serves as the managing agent and attorney-in-fact for Exchange. In return, and under an agreement between Indemnity and each Erie Insurance Group subscriber, Indemnity receives a management fee paid out from Exchange's funds.

In August 2021, Erie Insurance Group subscribers Troy Stephenson, Christina Stephenson, Susan Rubel, and Steven Barnett (collectively, the "Stephenson Plaintiffs") sued Indemnity in the Court of Common Pleas of Allegheny County. *See Stephenson v. Erie Indem. Co.*, 2:21-cv-1444 (W.D. Pa. Nov. 3, 2021). The suit alleged that Indemnity breached its fiduciary duty to Erie Insurance Group subscribers by charging an excessive management fee. The Stephenson

4

Plaintiffs brought the case as a class action under Pennsylvania law on behalf of themselves and other "Pennsylvania residents" who subscribed to Erie Insurance Group policies. JA 99.

Invoking federal jurisdiction under CAFA, Indemnity removed *Stephenson* to the U.S. District Court for the Western District of Pennsylvania. Shortly thereafter, the Stephenson Plaintiffs voluntarily dismissed the case. *See* Notice of Voluntary Dismissal, *Stephenson v. Erie Indem. Co.*, No. 21-1444, Dkt. 12 (W.D. Pa. Nov. 2, 2021).

B.

One month after the voluntary dismissal of *Stephenson*, Exchange filed this case in the Court of Common Pleas of Allegheny County. As in *Stephenson*, the Complaint here alleges that Indemnity breached its fiduciary duty by charging an excessive management fee. The operative facts and the legal theory in this case are identical to those in *Stephenson*. But unlike *Stephenson*, this case is not pled as a class action—rather, it is pled in Exchange's name "by" Troy Stephenson, Christina Stephenson, and Steven Barnett (the "Individual Plaintiffs").[1] The Individual Plaintiffs purport to bring the case "on behalf of Exchange and . . . to benefit all members of Exchange." JA 54.

Though the Complaint alleges only a single count of breach of fiduciary duty, it advances two legal theories for why

---

[1] Susan Rubel, who was named as a plaintiff in *Stephenson*, is not named as a trustee ad litem in this case.

5

the Individual Plaintiffs have a right to sue on Exchange's behalf. First, the Complaint characterizes the claim as one brought pursuant to Rule 2152 of the Pennsylvania Rules of Civil Procedure, which authorizes "[a]n action prosecuted by an association . . . in the name of a member or members thereof as trustees ad litem for such association." Pa. R. Civ. P. 2152. Alternatively, the Complaint characterizes the claim as one brought pursuant to Rule 2177 of the Pennsylvania Rules of Civil Procedure, which authorizes "a corporation or similar entity" to prosecute an action "in its corporate name." Pa. R. Civ. P. 2177.

Indemnity removed the case to the U.S. District Court for the Western District of Pennsylvania, again citing CAFA. Though the Complaint characterizes this case as an individual action on Exchange's behalf—not as a class action— Indemnity argued that the case is in substance a class action insofar as Exchange is a stand-in for a class of Erie Insurance Group subscribers. Indemnity also argued that the case was a continuation of *Stephenson* and therefore fell within the District Court's jurisdiction under "the well-established rule that plaintiffs cannot extinguish federal jurisdiction" once it has attached. JA 14. The District Court disagreed and, on Exchange's motion, remanded the case to state court.

Indemnity timely petitioned this Court for leave to appeal pursuant to 28 U.S.C. § 1453. The motions panel first denied the petition, reasoning that this case is distinct from *Stephenson* and that our precedents therefore dictate that the case is not a class action. Indemnity petitioned for rehearing.

6

The same motions panel then vacated its order and granted Indemnity leave to appeal.

## II.

Whether the District Court had jurisdiction is the sole question on appeal. "Federal courts are courts of limited jurisdiction," and "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). We therefore "presume[] that a cause lies outside [our] limited jurisdiction." *Id.* As the party seeking removal, Indemnity bears the burden of establishing federal jurisdiction, *see id.*, and here, the burden of showing that this case falls within CAFA's jurisdictional grant, *see Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

Indemnity asserts that the District Court had jurisdiction under 28 U.S.C. § 1332(d). We have jurisdiction to review the District Court's remand order pursuant to 28 U.S.C. § 1453(c). *See Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013) ("*Erie Insurance I*"). We review issues of subject matter jurisdiction and statutory interpretation de novo. *Id.* at 158 n.1.

## A.

To start, this case is not a class action as that term is defined in CAFA. Congress enacted CAFA to ensure federal

7

jurisdiction over "interstate cases of national importance."[2] CAFA § 2(b)(2). To that end, CAFA authorizes federal jurisdiction over class actions that arise under state law but that involve minimally diverse parties and an aggregate amount in controversy in excess of $5 million. 28 U.S.C. § 1332(d)(2). The statute defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B).

Our precedent in *Erie Insurance I* makes clear that this case is not a class action on its face. *Erie Insurance I* involved the same nominal parties and the same state procedural rules as this case. 722 F.3d at 156–57. We held that the case was not

---

[2] CAFA does not define what makes a class action nationally important, and we have not yet had the opportunity to address that question. When our sister circuits have sought such a definition, they generally have looked to the citizenship of the parties, the location of the operative facts, and which state's laws provide the basis for the legal claims. *See, e.g.*, *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 338 (4th Cir. 2019) (concluding that class action against large utility company on behalf of "thousands of . . . class members across the United States" was nationally important); *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 933 (9th Cir. 2015) (characterizing case as "largely a local California controversy involving routine employment discrimination claims arising solely under California law").

a class action for CAFA purposes because Rule 2152 was not "similar" to Rule 23.[3] *Id.* at 159. Accordingly, and on a record materially identical to this case, we affirmed the district court's order remanding the case to state court. *Id.* at 163.

Despite Indemnity's insistence to the contrary, we are bound to follow *Erie Insurance I*. Only when Supreme Court authority has "undermine[d] the rationale" of our precedent may a panel of this Court "reconsider contrary prior holdings without having to resort to an en banc rehearing." *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018). No such authority undermines *Erie Insurance I*. When we decided *Erie Insurance I*, we did so with the benefit of Supreme Court dicta and legislative history supporting a liberal construction of CAFA's jurisdictional provisions. That the Supreme Court has since reiterated those directives in cases involving other requirements of CAFA jurisdiction, *see, e.g.*, *Dart Cherokee*, 574 U.S. at 89, does nothing to undermine *Erie Insurance I*'s rationale. We must therefore conclude that this case is not a class action on its face.

This does not end our inquiry. If a complaint does not satisfy CAFA's jurisdictional requirements on its face, we must cut through any pleading artifice to identify whether the

---

[3] We further explained, albeit in dictum, that "Rule 2177 is even less like Rule 23 [than is Rule 2152] in that it contains none of Rule 23's class-related requirements, and, unlike Rule 2152, does not even explicitly contemplate a suit filed by a member 'on behalf of' an association." *Id.* Suits brought under Rule 2177 thus also are not "class actions" for CAFA purposes.

case is in substance an interstate class action. In *Standard Fire Insurance Co. v. Knowles*, the Supreme Court noted that courts must be careful not to "exalt form over substance" when determining whether a case satisfies CAFA's jurisdictional requirements. 568 U.S. 588, 595 (2013). At least one of our sister circuits has taken this dictum as an "instruct[ion] . . . to look beyond the complaint to determine whether the putative class action meets [CAFA's] jurisdictional requirements." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). Though we have not addressed that precise issue in the CAFA context, we repeatedly have held that courts may look beyond a complaint when ruling on factual challenges to their subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Indemnity invites us to look beyond the Complaint's characterization of this case as an individual action to the fact that the Complaint ultimately seeks to benefit a large interstate class of Erie Insurance Group subscribers.

But we have made clear—albeit outside the CAFA context—that we will look beyond the four corners of a complaint only when addressing factual predicates, not legal requirements, for our subject matter jurisdiction. *See Davis*, 824 F.3d at 346. And indeed, the overwhelming majority of CAFA cases in which courts have looked beyond the four corners of the complaint have turned on CAFA's amount in controversy requirement—a quintessentially factual inquiry. *See, e.g.*, *Standard Fire*, 568 U.S. at 596 (holding that a plaintiff may not evade CAFA jurisdiction by stipulating that the class would seek damages below CAFA's jurisdictional threshold); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d

10

405, 410 (6th Cir. 2008) (aggregating the amount in controversy across five related cases to determine whether case at bar met CAFA's jurisdictional threshold). But the primary obstacle preventing *this* case from falling within CAFA's definition of a class action is a quintessentially legal requirement: whether the Pennsylvania procedural rules governing Exchange's claim are similar to Rule 23. Search as we might, there are no facts beyond the Complaint that could alter our conclusion that the relevant state rules are dissimilar to Rule 23 and that this case therefore falls beyond the scope of CAFA jurisdiction. *See Erie Insurance I*, 722 F.3d at 160 ("No amount of piercing the pleadings will change the statute or rule under which the case is filed." (cleaned up)).

We likewise decline Indemnity's invitation to construe CAFA's text liberally in light of that statute's "primary objective: ensuring 'Federal court consideration of interstate cases of national importance.'" *Standard Fire*, 568 U.S. at 595 (quoting CAFA § 2(b)(2)). To be sure, we are careful not to "interpret federal statutes to negate their own stated purposes." *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973). Nor have we shied away from adopting purpose-driven—even atextual—constructions of CAFA in the past. *See Morgan v. Gay*, 466 F.3d 276, 279 (3d Cir. 2006) (offering "common sense revision" to misleading statutory text that contravened Congress's intent in enacting CAFA). "But no legislation pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987), and "we are not free to rewrite this statute (or any other) as if it did," *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 675 (2023). Indeed, "it frustrates rather than effectuates legislative intent

11

simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez*, 480 U.S. at 526.

CAFA's text leaves no wiggle room. A state court proceeding will be considered a class action under CAFA only if it is "filed under" a "State statute or rule of judicial procedure" that "authoriz[es] an action to be brought by 1 or more representative persons as a class action" and otherwise is "similar" to Rule 23. 28 U.S.C. § 1332(d)(1)(b). As discussed above, we are bound by our precedent to conclude that the state procedural rules at issue are dissimilar to Rule 23. *See Erie Insurance I*, 722 F.3d at 159. We likewise are bound by Congress's decision to limit CAFA jurisdiction to cases filed under state procedural rules similar to Rule 23. We acknowledge that CAFA was "intended to expand substantially federal court jurisdiction over class actions." S. Rep. No. 109-14, at 43 (2005). Yet Congress's "policy concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022). And that text plainly dictates that this case falls beyond CAFA's ambit.

Lastly, we note the Eighth Circuit's insightful dictum that when a plaintiff "seeks to return [a previously removed] case to his original chosen forum in a form that will avoid removal," it is not readily apparent "who is the forum shopper." *Tillman v. BNSF Ry. Co.*, 33 F.4th 1024, 1029 (8th Cir. 2022). It is for precisely this reason that text, rather than policy, must guide our jurisdictional inquiry. And it is for precisely this reason that we will adhere to our precedent and decline to treat this case as a class action.

12

B.

Recognizing the challenge that it faces in characterizing this individual claim as a class action, Indemnity has a fallback position: that the District Court had jurisdiction here because this case is a continuation of *Stephenson*.

Federal courts have long held that "events occurring subsequent to removal . . . do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). We assume, for the purpose of this case, that this rule applies to CAFA jurisdiction. *See Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014) (noting that "[e]very circuit that has addressed the question has held that" the *Red Cab* rule applies in the CAFA context). We likewise assume that the district court had jurisdiction in *Stephenson*.

But the *Red Cab* rule does not support Indemnity's assertion of federal jurisdiction, because this case is not a continuation of *Stephenson*. "[I]t is hornbook law that 'a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed.'" *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 19 (2d Cir. 2019) (emphasis omitted) (quoting 9 Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 2367, at 559 (3d ed. 2017)). It follows that when a plaintiff voluntarily dismisses his case, "any future lawsuit based on the same claim is an entirely new lawsuit unrelated to the earlier (dismissed) action." *City of South Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) (alterations omitted) (quoting

13

*Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990)).

Our opinion in *Vodenichar v. Halcon Energy Properties, Inc.*, is not to the contrary. 733 F.3d 497 (3d Cir. 2013). There, as here, we addressed a situation in which the plaintiffs voluntarily dismissed a federal court class action and refiled a new case in state court. *Id.* at 502. In determining whether the case fell within the district court's CAFA jurisdiction, we characterized the plaintiffs' voluntary dismissal and refiling strategy as similar "[i]n practical terms" to "a situation where a party amends a pleading to join parties to an existing case." *Id.* at 509. We therefore deemed it appropriate to "consider[] the second filed action a continuation of the first filed action." *Id.*

But a closer look at *Vodenichar* reveals this language to have been a red herring. The issue there was whether the dismissed action was an "other class action" as that term is used in CAFA's local controversy exception. *Id.* at 506 (citing 28 U.S.C. § 1332(d)(4)(A)). And to that end, our reasoning rested entirely on the text and purpose of the local controversy exception. *Id.* at 508–10. We noted that Congress "excluded from the local controversy exception cases where a defendant was named in multiple similar cases" because it was concerned that defendants would "face copycat[] suits in multiple forums." *Id.* at 508. By the same token, we reasoned that the "other class action" requirement was linked to one of Congress's goals in enacting CAFA: "control[ling] the impact of multiple class actions filed by different members of the same class against a defendant by providing a single forum to resolve

14

similar claims." *Id*. Noting the unique procedural history of *Vodenichar* and its predecessor and the many commonalities between the two suits, we determined that the situation in *Vodenichar* did not implicate Congress's policy concern because it was "not a copycat situation where the defendants face similar class claims brought by different named plaintiffs and different counsel in different forums." *Id.* at 509 We therefore concluded that the predecessor suit was not, "[i]n practical terms," an "other class action" for the purpose of the local controversy exception. *Id.*

Thus despite any facial similarities to this case, *Vodenichar* did not address the situation before us now, in which a removing defendant seeks to tie the instant case to its predecessor as a means of establishing federal jurisdiction. In fact, our decision to treat the two actions as a single proceeding in *Vodenichar* had precisely the opposite legal consequence in that case as it would here. There, we concluded that the successor case fell within CAFA's local controversy exception and thus exceeded the district court's jurisdiction. *Id.* at 510. Accordingly, we affirmed the district court's order remanding the case to state court. *Id.* By contrast if we were to treat *this* case as a continuation of *Stephenson*, we would reverse the District Court's remand order and hold that the plaintiffs' decision to file this case in state court had no bearing on whether the case would proceed in the state or federal forum.

That result would contradict our result in *Vodenichar*. We concluded there that the successor case fell within CAFA's local controversy exception and so belonged in state court rather than federal court. *Id.* at 509. That exception applies only

15

where at least one defendant "is a citizen of the State in which the action was originally filed." § 1332(d)(4)(A)(i)(II)(cc). *Vodenichar*'s predecessor was filed in Pennsylvania federal court and involved only one defendant, a Delaware corporation. *See id.* at 502, 504. It was the plaintiffs' addition of two Pennsylvania corporations as defendants in the refiled action that brought *Vodenichar* within the scope of the local controversy exception and thereby provided the basis for remanding the case to state court. *See id.* at 507.

That our jurisdictional determination in *Vodenichar* hinged on the updates in the refiled complaint makes clear that we considered *Vodenichar* to be a continuation of its predecessor only for the purpose of the local controversy exception. As noted above, it is an "elementary principle that jurisdiction which has once attached is not lost by subsequent events." *Fairview Park Excavating Co. v. Al Monzo Const. Co.*, 560 F.2d 1122, 1125 (3d Cir. 1977) (citation omitted). If we truly considered the *Vodenichar* plaintiffs' voluntary dismissal and refiling to be "no different from a situation where a party amends a pleading to join parties to an existing case," 733 F.3d at 509, we would have concluded that the case belonged in federal court and vacated the District Court's order—just as Indemnity asks us to do here. Instead, we concluded that the case belonged in state court without discussing whether federal jurisdiction had attached during the predecessor case. *Vodenichar* therefore supports rather than undermines the longstanding rule that a case brought after a voluntary dismissal is "an entirely new lawsuit unrelated to the earlier (dismissed) action." *Sandstrom*, 904 F.2d at 86.

16

What's more, the two actions at issue here involve different plaintiffs, further revealing that they are different cases. *Cf. Vodenichar*, 733 F.3d at 502 (treating two cases with shared plaintiffs as one). Formally, this case is pled in Exchange's name, while *Stephenson* was a class action pled on behalf of four named plaintiffs and other Pennsylvania residents who subscribed to Erie Insurance Group policies. And functionally, the real parties in interest here are different from the real parties in interest in *Stephenson*. While the proposed plaintiff class in *Stephenson* was expressly limited to "Pennsylvania residents," JA 99, any benefit that Exchange recovers here would flow to "all members of Exchange" no matter where they reside, JA 54. That difference undermines Indemnity's assertion that this case is merely *Stephenson* by another name.

The Seventh Circuit's decision in *Addison Automatics, Inc. v. Hartford Casualty Insurance Co.* likewise illustrates that while courts have at times found it rhetorically useful to characterize subsequent actions as continuations of voluntarily dismissed actions, they have not relied on that analogy as a rule of decision. 731 F.3d 740 (7th Cir. 2013). In *Addison*, the Seventh Circuit looked to a prior class action in holding that the federal courts had jurisdiction over a case that did not purport to raise class claims. *Id.* at 741. The litigation began when Addison Automatics, Inc. ("Addison") filed a class action against Domino Plastics Company ("Domino"), which Domino's liability insurer declined to defend. *Id.* at 741. Domino and Addison entered into a settlement agreement in which "Domino assigned to Addison—as class representative—whatever claims Domino might have against

17

its absent liability insurers" conditioned on Addison's service as class representative in a suit against the insurers. *Id.* Addison sued the insurer both individually and as a class representative, and the insurer removed to federal court under CAFA. *Id.* Addison voluntarily dismissed the case and filed a new case in state court, this time bringing only individual claims. *Id.* at 741–42.

In holding that the nominally individual suit was a class action for the purpose of CAFA jurisdiction, the Seventh Circuit noted the importance of focusing on substance rather than form in the CAFA context and analogized voluntary dismissal and refiling to amending the complaint. *Id.* at 744. But the court emphasized that its decision did "not depend" on that "detail[]," as the case would have been a federal class action and the court's "decision would [have been] the same even if Addison had not filed th[e] first complaint." *Id.* Instead, the court concluded that the case was "in substance a class action" because Addison had standing to sue "only in its capacity as class representative" and not individually. *Id.* at 742.

We are not blind to the substantial factual and legal overlap between this case and *Stephenson*. Nor do we ignore the fact that Exchange filed this case only one month after the Stephenson Plaintiffs dismissed their case against Indemnity and less than two months after Indemnity removed *Stephenson* to federal court. But we are not prepared to essentially set aside a basic principle of Anglo-American law: that distinct cases filed by distinct plaintiffs deserve distinct judicial treatment. We therefore will not gloss over the differences—however

18

minor or formalistic—between this case and *Stephenson*, and so will not treat Exchange's individual suit as a mere amendment to the Stephenson Plaintiffs' class action.

## III.

The District Court correctly determined that this case was neither a class action as that term is defined in CAFA nor a continuation of the voluntarily dismissed class action in *Stephenson*. Seeing no basis for exercising federal jurisdiction, we therefore will AFFIRM the District Court's order remanding this case to state court.