**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-2664 & 24-2672
_____

JASON ZANGARA,
                                        Appellant

v.

NATIONAL BOARD OF MEDICAL EXAMINERS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 2:23-cv-03928)
District Judge: Honorable John F. Murphy

&

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 3:22-cv-01559)
District Judge: Honorable Georgette Castner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 26, 2025
Before:  SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, Circuit Judges

(Opinion filed: April 28, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**PER CURIAM**

Medical student Jason Zangara filed this pro se action to challenge the way exam-administrator National Board of Medical Examiners (NBME) scores certain exams, the passing of which is required for Zangara to obtain his medical degree and licensure. Zangara's primary claim is that NBME's current scoring methodology effects disability-based discrimination, in violation of the Americans with Disabilities Act of 1990 (the ADA), 42 U.S.C. § 12101, et seq. NBME succeeded in having that and Zangara's other claims dismissed, with prejudice, under Federal Rule of Civil Procedure 12(b)(6). Because dismissal was the correct result, we will affirm.

I.      Background

Zangara resides in New Jersey.[1] As a child, he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and learning disorders. Those conditions make it so Zangara "is unable to concentrate for academic purposes anywhere but a silent room[;] the slightest distraction significantly interferes with any activity that he is working on." A.C. ¶ 17. Zangara also relays that he has "a problem with memory that has been investigated for years and the cause was never found." A.C. ¶ 18.

After graduating from high school, Zangara set out to become a doctor. He struggled, however, with so-called higher education. Zangara: enrolled in a pre-med program at a county college, but "was placed on academic restriction for failing courses,"

---

[1] Background facts are drawn from Zangara's amended complaint (DC ECF No. 51, cited as A.C. in this opinion), the allegations in which we accept as true for the purposes of review. See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

A.C. ¶ 27; was removed from a nursing program at a vocational school, because of failing grades; and was rejected from a nursing program at a different local college, because he was unable to satisfy the testing criteria for participation.

Zangara shelved his occupational dream for ten years—during which time he worked as a firefighter—before completing an online associates degree and then enrolling at Caribbean Medical University (CMU), on the island country of Curaçao. Zangara attended certain classes in person at CMU, where the professors "are more forgiving and do not discredit grades such as 'D's like the US does." A.C. ¶ 38. Zangara has received clinical training at various hospitals in the United States.

Zangara's persistence, however, has been unable to propel him over a particular obstacle in his pursuit of a medical degree: standardized exams. Such exams include the Comprehensive Basic Science Exam (CBSE) and the Comprehensive Basic Science Self-Assessment (CBSSA), which are developed and administered by private entity NBME and used to measure readiness for Step 1 of the United States Medical Licensing Examination (USMLE). The USMLE is, in brief, a 3-step exam regimen one must pass to obtain medical licensure in the United States.[2] Zangara has underperformed on the CBSE and CBSSA, as well as on subject-specific exams that are likewise administered by NBME and required to progress through medical school.

---

[2] We have previously described the USMLE as "a standardized multiple-choice test administered in three parts," that "was designed as a licensing exam meant to assess an examinee's understanding of, and ability to apply, concepts and principles that are important in health and disease and constitute the basis of safe and effective patient care." Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 149 (3d Cir. 1999).

3

Zangara attributes his lack of success to NBME's scoring methodology. That is, instead of scoring Zangara based on a "percentage of content mastered," NBME uses "complex methods that [compare] his score to the scores of others who took the exam prior." A.C. ¶ 53.[3] According to Zangara, NBME sets passing scores based on the probable number of correct answers given by a theoretical exam-taker with proficient ability, which numerical value is designed using historical exam results and assessing the relative difficulty of exam questions. Insofar as the passing score is informed by historical exam results, Zangara claims that NBME "discriminates against those that have a disability," A.C. ¶ 63, because his proficiency is being judged against that of a cohort of persons—alternately referred to by Zangara as a 'norm' or 'anchor' group—who do not have any disabilities. Zangara theorizes that, "[r]egardless of how many times Plaintiff or any disabled person takes the exam[,] they will be scored lower[.]" A.C. ¶ 87.[4]

---

[3] Zangara appended several exhibits to his amended complaint, including copies of CBSE and CBSSA performance reports reflecting his "total equated percent correct score" on those exams, which metric "represents the percentage of the content that you have mastered," but which is "statistically adjusted to account for variations in exam form difficulty and may be slightly lower or higher than the actual percentage of questions you answered correctly on this specific exam form." A.C. Exhs. J, K, O. All of those exhibits have been considered. Cf. Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016).

[4] Some allegations in Zangara's amended complaint strike us as demonstrably false, in part because of information *he* supplies indicating, for example, that examinees with disabilities would be part of any norm/anchor group, see, e.g., A.C. ¶ 13 (cataloguing ADA litigation against NBME over the last quarter century), and that a majority of examinees with disabilities passed one of NBME's exams even without any accommodations, see Reply Br. 31 (referring to an extra-record study). We have nevertheless accepted as true all of the allegations in the amended complaint.

Proceeding pro se and in forma pauperis (IFP), Zangara filed suit against NBME in the United States District Court for the District of New Jersey (the DNJ). He also filed a motion for a preliminary injunction (PI), with which he sought to enjoin NBME's use of its current exam-scoring methodology. The DNJ denied the PI motion, determining that personal jurisdiction over NBME was lacking. Zangara moved for reconsideration or, in the alternative, a transfer of the case—under 28 U.S.C. § 1404(a)—from the DNJ to the United States District Court for the Eastern District of Pennsylvania (the District Court). The DNJ denied reconsideration, and denied the transfer request without prejudice, in an order that also granted Zangara's unopposed motion to amend.

Zangara filed an amended complaint raising 86 claims under, inter alia, the ADA, Section 504 of the Rehabilitation Act, 29 U.S.C. § 974, and New Jersey law. He alleged that NBME is a corporate citizen of both Pennsylvania and Washington, D.C., and that it conducts its business nationwide. Zangara alleged further that NBME sells its exams to medical schools in New Jersey, as well as to private testing centers in New Jersey where students, like Zangara, who attend medical school out of state can sit for NBME's exams.

Acting sua sponte under § 1404(a)—and determining that Zangara had consented to personal jurisdiction in the District Court because he (1) proposed a transfer to that court as relief alternative to reconsideration, and (2) yielded to such jurisdiction during a case conference—the DNJ transferred the action to the District Court. Afterward, NBME moved to dismiss the amended complaint, and Zangara again moved for a PI. The District Court heard argument, then entered an order granting NBME's motion, denying Zangara's motion, and dismissing the case.

5

In the opinion accompanying its order of dismissal, the District Court emphasized Zangara's position that he did not seek an accommodation under the ADA—that all he wanted was for NBME to halt the use of its alleged scoring methodology. The District Court acknowledged NBME's argument that Zangara's allegations about its methodology were contradicted by exhibits he attached to his own pleading, but noted that it was "required to accept Mr. Zangara's allegations as true at this stage." DC ECF No. 89 at 2 n.1.[5] In the end, the District Court ruled against Zangara for essentially this reason:

> [T]he ADA requires removal of certain testing "features" that disadvantage students with disabilities. Mr. Zangara, however, does not wish to partake in this process by requesting reasonable accommodations. Instead, Mr. Zangara proposes requiring that the NBME implement an entirely new grading system that bars comparisons "to any current or prior testing candidate" when determining passing scores. On the record of this case, this proposal exceeds the relief appropriate under the ADA.

DC ECF No. 89 at 10 (internal citations omitted).

These now-consolidated appeals followed.[6]

---

[5] Not so: When a party's "own exhibits contradict her allegations in the complaint, the exhibits control." Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 112 (3d Cir. 2018). Any oversight of that rule is of no consequence to our disposition, however. And we stress here that we have proceeded as if none of the factual allegations in Zangara's amended complaint were refuted by the very exhibits he attached thereto.

[6] Zangara's appeal docketed at C.A. No. 24-2672 will be dismissed. See 15 C. Wright, et al., Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ("When a motion for transfer under 28 U.S.C.A. § 1404(a) is granted and the papers are lodged with the clerk of the transferee court, the transferor court and the appellate court for the circuit in which that court sits lose jurisdiction over the case and may not proceed further with regard to it."); see also Hudson United Bank v. Chase Manhattan Bank of Conn., N.A., 43 F.3d 843, 845 n.4 (3d Cir. 1994). For Zangara's benefit, we note that dismissal of that appeal has not altered the scope of our review.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over Zangara's ADA and other federal claims. See 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291, to review the District Court's judgment and any interlocutory rulings that merged with that judgment. See In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996).

With regard to the District Court's decision to grant NBME's motion to dismiss under Rule 12(b)(6), specifically, our review is de novo. See United States ex rel. Bookwalter v. UPMC, 946 F.3d 162, 168 (3d Cir. 2019). Notably, "[i]n order to defeat a Rule 12(b)(6) motion, plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'" Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

## III. Discussion

Zangara asks us to decide this issue central to his case: Whether he stated a viable ADA claim against NBME. See Br. 4 ("[T]his appeal is brought to find out if Defendants can be held accountable under the ADA for the way they score exams.").[7]

---

[7] Zangara purports to raise dozens of other issues on appeal. Issues that Zangara merely "listed" in a notice of appeal, cf. Doc. 1 (both dockets) at 1–9, or that were presented in his opening brief only in conclusory fashion, or that were raised for the first time in the reply brief, are all deemed forfeited. See Garza v. Citigroup Inc., 881 F.3d 277, 284 (3d Cir. 2018); Skretvedt v. E.I. DuPont de Nemours, 372 F.3d 193, 202–03 (3d Cir. 2004). Zangara's being permitted to proceed here on the original record—by virtue of his IFP status—relieved him of the responsibility to compile an appendix, see 3d Cir. L.A.R. 30.2

The ADA embodies a "national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).[8] The statute's work is

(2011); cf. Fed. R. App. P. 30(f), but not the responsibility to craft an opening (albeit informal) brief that adequately apprised the Court of the issues for review.

      The central and forfeited issues aside, the remainder of the issues presented by Zangara are without merit. The District Court had no statutory obligation to screen Zangara's (a non-prisoner's) original complaint under 28 U.S.C. § 1915(e)(2), cf. 28 U.S.C. § 1915A; it did not so screen the complaint; and the absence of such screening had no preclusive effect generally, or any bearing on NBME's right to raise and litigate affirmative defenses—in response to Zangara's amended complaint or otherwise. Zangara, moreover, misattributes preclusive effect to NBME's decision not to oppose his motion to amend the original complaint. NBME plainly was free to *re*-raise its affirmative defense that Zangara failed to state a claim on which relief could be granted. See Kellom v. Quinn, 86 F.4th 288, 292 (6th Cir. 2023); Fed. R. Civ. P. 12(b), (h). Lastly, while we might have been less skeptical than the DNJ of Zangara's argument that NBME was subject to personal jurisdiction in New Jersey, given the allegations in the amended complaint, see, e.g., Alston v. Nat'l Conf. of Bar Exam'rs, 314 F. Supp. 3d 620, 624 (E.D. Pa. 2018) (finding specific jurisdiction over NCBE in Pennsylvania where plaintiff alleged that NCBE sent exam materials into the state, plaintiff took the exam there, "and a portion of his grade sheet . . . was sent back to NCBE, which then employed an unconstitutional grading methodology, and sent the resulting score back to Pennsylvania"), personal jurisdiction was still a disputed issue, and we cannot say that the DNJ committed an abuse of discretion when it weighed the various interests at play, see DC ECF No. 66 at 6–16. Cf. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) (noting our "deferential" review of § 1404(a) interest-weighing).

[8] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); see also 28 C.F.R. § 35.108(a)(1). For the purposes of this appeal, we will assume without deciding that Zangara has a "disability." Cf. 28 C.F.R. § 35.108(a)(2)(iii) ("Where an individual is not challenging a public entity's failure to provide reasonable modifications . . ., the evaluation of coverage can be made solely under the 'regarded as' prong of the definition of 'disability,' which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment."); 28 C.F.R. §

performed across "three titles of regulation—Title I (employers), Title II (governments), and Title III (public accommodations)." Matheis v. CSL Plasma, Inc., 936 F.3d 171, 176 (3d Cir. 2019). Title III, specifically, "prohibits public accommodations from imposing eligibility criteria that tend to preclude those with a disability from enjoying the public accommodation's good or service." Campbell v. Universal City Dev. Partners, Ltd., 72 F.4th 1245, 1251 (11th Cir. 2023).

Critically, Title III also contains a special rule for cases involving alleged "discrimination by providers of examinations" like NBME. Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 154 (3d Cir. 1999). Such cases are governed by § 309 of Title III. See id. at 155 ("We believe that the rationale of the 'specific governs the general' canon counsels that we treat section 309 as Congress's specific definition of what Title III requires in the context of examinations."). Section 309 provides:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. The purpose of this section is "to assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an inaccessible site or without an

---

35.108(b)(2) ("Physical or mental impairment includes, but is not limited to . . . . specific learning disabilities [and] Attention Deficit Hyperactivity Disorder[.]").

9

accommodation." H.R. Rep. No. 101–485(III), at 68–69 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 491–92.

Implementing regulations, promulgated by the Department of Justice pursuant to an express delegation, cf. 42 U.S.C. § 12186(b), flesh out the "place and manner" rules for entities that offer § 309-covered exams, see 28 C.F.R. § 36.309(a).[9] Among their other obligations, examiners must assure that their exams are "administered in facilities that are accessible to individuals with disabilities or alternative accessible arrangements are made," 28 C.F.R. § 36.309(b)(iii), and that requests for accommodations are responded to in a timely manner and not met with burdensome demands for documentary support, see 28 C.F.R. § 36.309(b)(iv), (vi). The regulations also give examples of permissible accommodations examinees may request. See, e.g., 28 C.F.R. § 36.309(b)(2) ("Required modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."); 28 C.F.R. § 36.309(b)(4) ("Alternative accessible arrangements may include, for example, provision of an examination at an individual's home with a proctor if accessible facilities or equipment are unavailable.").

---

[9] We are not deciding whether "such regulations [still] have 'the force and effect of law,'" Ramsay v. Nat'l Bd. of Med. Exam'rs, 968 F.3d 251, 257 (3d Cir. 2020) (citation omitted), following Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). That said, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." Id. at 413. In any event, our discussion of the regulations here is mainly to illustrate the rights and responsibilities that may be implicated in a typical § 309 action.

10

Section 309 and <u>Doe</u> represent the law applicable to Zangara's ADA claim. And to enlist that law in his cause and survive a motion to dismiss under Rule 12(b)(6), Zangara needed to allege in his operative pleading facts that raised his "right to relief above the speculative level[.]" <u>Eid</u>, 740 F.3d at 122. Zangara, however, did not allege in his amended complaint that he ever sought (let alone was denied) an accommodation that would have assisted with taking one of NBME's exams. And the amended complaint as a whole was conspicuously devoid of allegations suggesting that NBME's exams were administered to Zangara in a way that violated the "place and manner" piece of § 309.

Zangara's allegations relevant to liability instead revolved around a scoring methodology that, he claims, produces inequitable results. But, as we made clear in <u>Doe</u>:

> [T]he notion of accessibility . . . does not mandate that the NBME provide examinations to the disabled that yield technically equal results; it mandates changes to examinations—'alternative accessible arrangements,' 42 U.S.C. § 12189—so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them.

199 F.3d at 156; <u>see also</u> <u>id.</u> ("[Doe] would have us hold that the phrase 'in a manner accessible' [in § 12189] includes by implication the requirement that the resulting scores be declared psychometrically comparable to the scores of examinees who take the test under standard conditions. However, neither the language of the statute nor the regulation interpreting it sets forth or implies such a requirement.").

11

Thus, like the District Court, we are unable to discern in Zangara's operative pleading a plausible claim under Title III of the ADA. Per Doe, Zangara cannot prevail, and the District Court was right to dismiss his case.[10]

Zangara's principal retort is that he adequately pleaded a violation of the ADA if the law governing his claim is more expansive than as described in Doe—if it is instead a patchwork quilt of: Title III's provisions related to academic testing (§ 309) *and* public accommodations generally (§ 302); the regulations implementing § 309 (i.e., 28 C.F.R. § 36.309); the regulations implementing § 302 (i.e., 28 C.F.R. § 36.301); and Title I's provisions related to occupational testing (42 U.S.C. §§ 12112(b)(6)–(7)).[11] We can and should undertake that elaborate and unprecedented stitching, Zangara says, because we did something similar in E.E.O.C. v. Kronos Inc., 620 F.3d 287, 296 (3d Cir. 2010)

---

[10] Because Zangara had no prospect of merits success, the District Court was justifiably compelled to deny his renewed PI motion. See Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd., 108 F.4th 144, 150 (3d Cir. 2024).

[11] On top of that, Zangara argues that a disparate-impact theory of liability is available for Title III claims, and that we should be the first appellate court to so hold. Cf. Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003) (observing in a Title I case that "[b]oth disparate treatment and disparate impact claims are cognizable under the ADA"); Tardif v. City of New York, 991 F.3d 394, 404 (2d Cir. 2021) (explaining that "[a] plaintiff may base her Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation."); A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1300 n.15 (11th Cir. 2018) (passing on the question of whether "Title III of the ADA provides only a statutory discrimination claim for failure to make reasonable and necessary modifications," to the exclusion of "a statutory claim for intentional or disparate-impact discrimination"). We need not and do not break new ground in these appeals, where Zangara does not plausibly plead a prima facie case of discrimination under § 309.

(Kronos I), our decision in Doe is outmoded, and the Department of Justice "did not write [the exam-related regulations] correctly." Br. 6-7.[12]

We apply the law as written and as interpreted in binding precedent. Cf. United States v. Safehouse, 985 F.3d 225, 230 (3d Cir. 2021) ("[O]ur focus is on what Congress has done, not what it should do.").[13] So, we adhere to Doe unless and until one of a limited set of yet-to-arise circumstances actually does come to pass. See Erie Ins. Exch. by Stephenson v. Erie Indem. Co., 68 F.4th 815, 819 (3d Cir. 2023) ("Only when Supreme Court authority has 'undermine[d] the rationale' of our precedent may a panel of this Court 'reconsider contrary prior holdings without having to resort to an en banc rehearing.'") (citation omitted); E.I. DuPont de Nemours & Co. v. United States, 508 F.3d 126, 132 (3d Cir. 2007) (discussing legislative override of statutory judicial

_____

[12] Zangara appears to misread Kronos I. In that case, the EEOC sought to enforce a third-party administrative subpoena it issued in furtherance of its investigation into a charge of disability discrimination. The subpoena was directed at the creator of an employment test that, in practice, allegedly violated Title I of the ADA. The EEOC's appeal of the district court's order narrowing the reach of the subpoena "required us to consider the scope of the EEOC's investigatory power," and resulted in a number of legal determinations— among them that "evidence that would 'cast light on' either a claim for disparate treatment or disparate impact caused by the use of" the subject employment tests satisfied the relevance requirement of 42 U.S.C. § 2000e-8(a), and was thus fair game for the agency to pursue, even though the underlying charge lacked an allegation of disparate impact—none of which is germane to Zangara's theory of liability here. E.E.O.C. v. Kronos Inc., 694 F.3d 351, 357 (3d Cir. 2012), as amended (Nov. 15, 2012).

[13] Zangara's reliance on dicta in Doe regarding § 302 of Title III is unavailing. See Tyler v. Cain, 533 U.S. 656, 663 n.4 (2001) (noting that dictum is "not binding" and is different from a holding, with dictum not being necessary to the end result) (citation omitted).

13

precedent).[14] Ultimately, Zangara's novel theory of liability does not persuade us to reach a result different than that reached by the District Court.

IV.

For the reasons outlined above, we will affirm the judgment.

---

[14] Zangara points out that the ADA's definition of "disability" was amended in 2008, after Doe was decided. See Br. 6; cf. Robinson v. First State Cmty. Action Agency, 920 F.3d 182, 186 (3d Cir. 2019) (noting as much). But no part of Doe turned on the definition of "disability." Cf. Doe, 199 F.3d at 149. And, regardless, we have already assumed, arguendo, that Zangara qualifies as having a "disability" under the ADA.